BLANK ROME LLP
Proposed Attorneys for Debtor
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Marc E. Richards
Steven A. Shoumer
Joel C. Shapiro
Scott F. Budzenski

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
In re:                                                    :
                                                          :
METROPOLITAN 885 THIRD AVENUE     :   Case No. 10-_____ (____)
LEASEHOLD, LLC,                                    :
                                                          :   Chapter 11 Case
             Debtor.                                  :
---------------------------------------------------------- x

**DECLARATION OF JACOB ABIKZER**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, Jacob Abikzer declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.   I am a Member of Metropolitan Real Estate Investors, LLC, a California limited liability company, itself the managing member of Metropolitan 885 Third Avenue LLC, a Delaware limited liability company, itself the managing member of Metropolitan 885 Third Avenue Leasehold Holdings LLC, a Delaware limited liability company, itself the sole member of Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz LLC, a Delaware limited liability company, itself the sole member of Metropolitan 885 Third Avenue Leasehold, LLC, a Delaware limited liability company ("Debtor" or "Company") which is a debtor and debtor in possession in

the above-captioned chapter 11 case. In that capacity, I am familiar with the Debtor's day-to-day operations, business and financial affairs.[1]

2.      I have more than 10 years' experience in the real estate industry and have been affiliated with the Debtor since its inception in 2007. I am the co-founder and President of the Asset Management Company (defined below), and I have been actively involved in the acquisitions process as well as asset management duties for all of the Asset Management Company's assets. Since 2002, the Asset Management Company's acquisitions exceed $1 billion and it manages over 3 million square feet of Class A office buildings in cities such as New York and Dallas.

3.      I submit this declaration ("Declaration") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules") to assist the Court and other parties in interest in understanding the circumstances that compelled commencement of this chapter 11 case and in support of: (i) Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date") and (ii) the relief, in the form of motions and applications that the Debtor has requested of the Court (collectively, the "First Day Pleadings"), including the Motion to Schedule a Combined Hearing under 11 U.S.C. § 105(d)(2)(b)(vi) to Approve the Adequacy of the Solicitation and Disclosure Statement and the Prepetition Solicitation Procedures and Confirm the Prepackaged Chapter 11 Plan of Reorganization, (ii) Establishing Deadlines and Procedures for Filing objections to the Approval of the Solicitation and Disclosure Statement or

---

[1] Attached hereto as Exhibit A is a chart setting forth the Debtor and its direct and indirect members as set forth in paragraph 1.

2

the Prepetition Solicitation Procedures or Confirmation of Plan, and (iii) Approving the Form and Manner of Notice of the Confirmation Hearing.

4. Importantly, included as part of the First Day Pleadings is: (i) Plan Support Agreement ("Exit Facility Plan Support Agreement") with Royal Bank of Canada ("RBC"), the Debtor's principal secured lender; (ii) Equity Commitment Agreement ("Equity Commitment Agreement") from New Lipstick LLC ("NL"); and (iii) Plan Support Agreement – Existing Equity ("Existing Equity PSA"). The Exit Facility Plan Support Agreement, Equity Commitment Agreement and Existing Equity PSA were each negotiated and delivered prior to the Petition Date. The Exit Facility Plan Support Agreement acknowledges RBC's support for the Debtor's Plan of Reorganization dated November 12, 2010 ("Plan") submitted herewith. The Equity Commitment Agreement confirms that NL will contribute funds of not less than $15 million to pay down the secured loan held by RBC.[2] Finally, the Existing Equity PSA acknowledges the treatment and support of the direct and indirect members of the Debtor.

5. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other direct and indirect members of the Debtor, my review of relevant documents, or my opinion based upon experience, knowledge and information concerning the Debtor's operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtor.

---

[2] RBC has asked that Debtor deliver papers authorizing RBC to proceed with foreclosure and that these papers be held in escrow pending certain events. Among these events is a concept that the escrow, under certain circumstances, will be released if the Plan has not been confirmed and implemented by April 15, 2011.

6. This Declaration is intended to provide a summary overview of the Debtor and this chapter 11 case. Section I of this Declaration provides an overview of the Debtor's business, background, capital structure, and the circumstances giving rise to the commencement of this chapter 11 case. Section II summarizes the Debtor's Plan and Restructuring. Section III summarizes the relief requested in each of the First Day Pleadings and Section IV lists the schedules and information required by Local Bankruptcy Rule 1007-2.

I.

a. <u>Debtor's Background and Business</u>

7. The Debtor was organized in 2007 as a Delaware limited liability company and is wholly owned by Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz LLC, a Delaware limited liability company ("Parent"). The Debtor owns the leasehold interest on a 34 story Class A office building located on the eastside of Third Avenue between 53rd and 54th Streets in New York City ("Third Avenue Property"). The building was completed in 1986 and is commonly known as the "Lipstick Building" for its distinctive elliptical shape.

8. The Third Avenue Property consists of rentable commercial space, approximately 63.5% of which is occupied by one tenant (with the lease termination date of June 2021). The Third Avenue Property is currently zoned for C6-6/C1-9 Commercial/Retail. The Debtor obtained its interest in the property through two ground leases as the land is divided into two adjacent parcels, the first measuring 5,500 square feet and the second measuring 20,635 square feet.

9. The Debtor has no employees. Metropolitan Real Estate Investors, LLC, a California limited liability company is the asset management company ("Asset Management Company") with respect to the Third Avenue Property and CB Richard Ellis, Inc. ("CBRE") is

4

the management company operating the Third Avenue Property (the "Management Company"). CBRE makes payment to its employees who perform the day-to-day operations of the Third Avenue Property. The Asset Management Company is the managing member of Metropolitan 885 Third Avenue LLC, a Delaware limited liability company ("Metropolitan"), which in turn is a managing member of Metropolitan 885 Third Avenue Leasehold Holdings LLC ("MTAL").

10. Prior to the Petition Date, Debtor became indebted to RBC in the sum of $210,000,000 ("RBC Loan"). The RBC Loan was secured by a lien on the Third Avenue Property. Parent owns 100% of the membership interests of Debtor. In connection with the RBC Loan, Debtor also obtained an initial equity infusion from MTAL in the amount of $117,930,000.00. One of the members of MTAL is entitled to receive a preferred return on its investment before any of the other members. As of the Petition Date, the outstanding borrowings under the RBC Loan is in the principal amount of $210,000,000 (plus accrued interest, costs, fees, penalties and expenses).

11. The causes which gave rise to the need to seek relief under chapter 11 are numerous. First, the recent violent downturn in the building and real estate markets have had a significant impact on the Debtor's operations. Vacancy rates have increased making it more challenging to service the debt on the property. Renewal lease rates have also been lower than anticipated. Such lower renewal lease rates have continued to negatively impact the cash flow of the Third Avenue Property, which resulted and continues to result in an undue strain on the Debt Service Fund (as hereinafter defined). The Debtor filed this case as a result of serious liquidity issues.

12. A substantial portion of the Debtor's revenue has been impacted by contractions in the commercial real estate markets throughout the United States. By way of example,

Debtor's tenant base is strongly associated with consumer confidence in the economy and the financial industry and as such, has been affected by the current recession. In brief summary, the significant decline in rental revenue and liquidity position compelled the Debtor to seek an alternative to its current position.

b.  Parties and Capital Structure

13.  Under the existing RBC Loan, the Debtor is the borrower. As noted, the sole 100% member of the Debtor is the Parent. And the 100% member of the Parent is MTAL. MTAL is owned by Metropolitan and by Goldman, Sachs & Co., a New York limited partnership ("GS"). Metropolitan is the managing member of MTAL.

14.  As noted, the Debtor's significant indebtedness, $210,000,000 of secured debt (plus accrued interest, costs, fees, penalties and expenses), is to RBC. The instruments evidencing the Debtor's indebtedness to RBC are described below. In addition to the foregoing, the Debtor has unsecured trade debt incurred in the ordinary course of its operations.

15.  Pursuant to that certain loan agreement, dated as of July 9, 2007, RBC, as collateral agent for the benefit of the holder or holders of the notes and their respective successors and assigns made a loan to Debtor in the original aggregate principal amount of $210,000,000. The RBC Loan is evidenced by a certain Amended, Restated and Consolidated Promissory Note (Note A) in the original principal amount of $125,000,000 ("Note A"*)* and that certain Amended, Restated and Consolidated Promissory Note ("Note B") in the original principal amount of $85,000,000 ("Note B"; and together with Note A, collectively, the "Original Notes"), in each case dated as of July 9, 2007 (the "Original Closing Date").

16.  The Original Notes are in turn secured, *inter alia*, by that certain Amended, Restated and Consolidated Leasehold Mortgage, Security Agreement, Fixture Financing

Statement and Assignment of Leases and Rents, dated as of the Original Closing Date (the "Original Mortgage") and recorded as Document ID: 2007071901142013 on August 7, 2007 and encumbering the Third Avenue Property.

17. The Debtor also entered into the following documents on the Original Closing Date in connection with the RBC Loan: (i) an Assignment of Leases and Rents; (ii) an Environmental Indemnity Agreement; (iii) a Subordination of Asset Management Agreement and Management Fees (Asset Management Company signed as Manager of the Third Avenue Property); (iv) a Limited Guaranty by Haim Revah; (v) a Subordination of Management Agreement and Management Fees; (vi) a Deposit Account Control Agreement (Security Deposits) (Three Party Hard Lockbox) by and among Debtor, RBC and PNC Bank, National Association ("PNC"); (vii) a Deposit Account Control Agreement (Three Party Hard Lockbox) by and among Debtor, RBC and PNC; (viii) a Deposit Account Control Agreement by and among Debtor, RBC and Bank of America, N.A. ("BofA"); and (ix) a state level UCC and a county level UCC fixture filing.

18. As of the Original Closing Date, amounts were deposited in the "Debt Service Fund" to be applied by RBC to pay "Debt Service" (as defined in the RBC Loan) due on the RBC Loan.

19. Pursuant to Section 6(d) of the RBC Loan, Debtor is required to maintain a balance of at least $2,300,000 in a debt service fund ("Debt Service Fund") to pay monthly interest. On April 6, 2010, Midland Loan Services, Inc., acting as Servicer of the Loan on behalf of RBC ("Servicer"), emailed Debtor that as of April 1, 2010, disbursement from the Debt Service Fund caused the balance of the Debt Service Fund to drop below the required $2,300,000 threshold. On April 19, 2010, RBC delivered a written default notice to Debtor that Debtor was

7

required to deposit funds equal to $280,126.41 to cover the shortfall in the Debt Service Fund. On May 5, 2010, Servicer once again emailed Debtor informing Debtor that a disbursement from the Debt Service Fund to fund the debt service had caused the balance of the Debt Service Fund to drop below $2,300,000. On May 17, 2010, RBC delivered a second written default notice to Debtor that Debtor was required to deposit funds equal to $621,394.51 to cover the shortfall in the Debt Service Fund.

20.     Debtor failed to replenish the Debt Service Fund to the $2,300,000 required threshold within the timeframe required by RBC.

## FORECLOSURE ACTION

21.     In connection with the Debtor's failure to replenish the Debt Service Fund, RBC filed an action in foreclosure against Debtor on June 21, 2010 in the Supreme Court of the State of New York County of New York (Index No. 650675/10). The foreclosure complaint alleges that the Debtor failed to maintain a balance of $2,300,000 in the Debt Service Fund and continues to fail to do so and that RBC accordingly elected to accelerate the entire indebtedness due under the Original Loan Documents.

22.     As of August 6, 2010, the Debt Service Fund was, and continues to be, depleted.

## II.

## PLAN OF REORGANIZATION AND RESTRUCTURING

23.     The Debtor and RBC have commenced meaningful negotiations which have resulted in the promulgation by Debtor of the Plan. As provided for in the Plan: (i) RBC has agreed, solely in connection with the confirmation and the effective date of the plan, to further reduce the outstanding principal amount of the RBC Loan so that the same shall have an outstanding principal amount equal to $130,000,000 and (ii) Debtor will prepay a portion of the

8

outstanding principal amount of the RBC Loan in an amount equal to $15,000,000 leaving a balance of $115,000,000 (collectively, the "Reduction in Principal").

24. In connection with the Reduction in Principal and as provided for in the Plan, Debtor and RBC have agreed to modify the terms of the RBC Loan. In connection therewith, Debtor and RBC will enter into an Amended and Restated Loan Agreement. In connection therewith, Debtor and RBC intend to enter into a Second Amended, Restated and Consolidated Promissory Note on the Effective Date of the Plan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Amended Note"), pursuant to which the Original Notes will be consolidated, amended and restated into a single note in an outstanding principal amount equal to One Hundred Fifteen Million and no /100 Dollars ($115,000,000). The Amended Note will be secured by a Second Amended, Restated and Consolidated Leasehold Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents dated as of the Effective Date (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Amended Mortgage").

25. As part of the restructuring of the RBC Loan under the Plan, NL will also pledge to RBC all of its 100% ownership interest as the sole member of Debtor.

26. Debtor will also enter into the following documents upon the closing of the restructuring and upon the Effective Date of the Plan: (i) an Amended and Restated Assignment of Leases and Rents; (ii) an Amended and Restated Environmental Indemnity Agreement; (iii) an Amended and Restated Subordination of Asset Management Agreement and Management Fees (Asset Management Company will sign as Manager of the Third Avenue Property); (iv) an Amended and Restated Subordination of Management Agreement and Management Fees (CBRE will sign as Management Company operating the Third Avenue Property); (v) an Amended and

Restated Limited Guaranty; (vi) a Guaranty from NL in favor of RBC (this Guaranty is required because of the addition of the Pledge Agreement with respect to the pledge of NL's membership interests in the Debtor); (vii) an Amended and Restated Deposit Account Control Agreement (Security Deposits) (Three Party Hard Lockbox) by and among Debtor, RBC and PNC or successor thereto; (viii) an Amended and Restated Deposit Account Control Agreement (Three Party Hard Lockbox) by and among Debtor, RBC and PNC or successor thereto; (ix) an Amended and Restated Deposit Account Control Agreement by and among Debtor, RBC and BofA or successor thereto; (x) a Pledge and Security Agreement from NL in favor of RBC; (xi) Limited Guaranty from and an affiliate of NL acceptable to RBC; (xii) a state level UCC and a county level UCC fixture filing; and (xiii) other appropriate ancillary documents.

27.  The following is a summary outline of the Debtor's Plan:

a.  The Plan shall require that a new entity, NL, will contribute to Debtor (in exchange for 100% of the newly issued membership interests of reorganized Debtor) an amount equal to the MJM Payment[3], plus such other funds as are necessary to implement the planned repayment of principal on the restructured mortgage loan (estimated to be in an amount no less than $15 million) and for any other purposes, plus the Class 3 Reserve Payment, RBC Expenses, amounts necessary to pay Plan Expenses and all Allowed Administrative, Priority Tax, Other Priority and Fee Claims not otherwise paid under the Cash Collateral Order entered by the Court, and reserves for certain disputed claims as provided the Plan, collectively ("Equity Infusion"). The MJM Payment will be reduced by the

---

[3] Capitalized terms not otherwise defined in this subparagraph shall have the meaning ascribed to them in the Plan.

                amounts received by GS after the date hereof from the cash collateral account (the "Collateral Account") that Metropolitan has pledged to GS during the corresponding period.

b.      On the Effective Date of the Plan and contemporaneously with all of the other distributions contemplated under the Plan (which distributions shall be subject to the exemption under Section 1146(a) of the Bankruptcy Code), Debtor will distribute the MJM Payment to Parent.

c.      The Plan shall provide (1) for the assumption of the two ground leases for the Third Avenue Property, (2) assumption of all other material executory contracts of Debtor and (3) for the parties to amend and restate the terms of the loan with RBC to, among other things, reduce the principal balance from $210 million to $130 million.

d.      Debtor shall utilize part of the Equity Infusion to pay the sum of $15 million on account of principal due and owing to RBC, bringing the RBC Loan balance down to $115 million (the "Reduced RBC Secured Claim"). The Reduced RBC Secured Claim shall be repaid in accordance with the terms and conditions of the agreements with RBC attached to the Exit Facility Plan Support Agreement.

## III.

## FIRST DAY PLEADINGS

28.      The Debtor intends to seek relief from the Court as soon as possible for each of the First Day Pleadings set forth below in summary fashion:

1. Scheduling Motion for a Prepackaged Chapter 11 Case

    - By this Motion, the Debtor seeks entry of an order (i) scheduling the Confirmation Hearing to approve the adequacy of the information contained in the Solicitation and Disclosure Statement and the Prepetition Solicitation Procedures and consider confirmation of the Plan, (ii) establishing deadlines and procedures for filing objections to approval of the Solicitation and Disclosure Statement, the Prepetition Solicitation Procedures or confirmation of the Plan, and (iii) approving the form and manner of notice of the commencement of this chapter 11 case and the scheduling of the Confirmation Hearing.

2. Chapter 11 Plan of Reorganization

    - As more fully set forth above, the Debtor's Plan provides that, *inter alia*, the Debtor will prepay a portion of the outstanding principal amount of the RBC Loan in an amount equal to $15,000,000, and RBC has agreed, solely in connection with confirmation and effective date of the Plan, to further reduce the outstanding principal amount of the Original Notes so that the same shall have an outstanding principal amount equal to $115,000,000. The Existing Equity PSA acknowledges the treatment of direct and indirect members of the Debtor.

3. Disclosure Statement for the Debtor's Plan of Reorganization

    - The Disclosure Statement describes the Debtor's Plan of Reorganization and is intended to solicit votes on the Plan, which have already been received, from holders of RBC Secured Claims (Class 2) and MJM Interests (Class 4) (each as defined in the Plan). The Disclosure Statement was transmitted and/or made available to each person or entity that was entitled to vote on the Plan.

4. Cash Collateral Motion and Stipulation (Interim and Final Orders)

    - By this Motion, the Debtor seeks entry of an Interim Order (i) authorizing the Debtor to use cash, that may otherwise serve as collateral security for the amounts owed to RBC (the "Cash Collateral"), pursuant to a limited budget (the "Budget"), as working capital to purchase goods and services and pay operating expenses related to the Third Avenue Property in the ordinary course of business, and in order to preserve the value of the Debtor's estate, including, without limitation, using Cash Collateral per the Budget for a brief interim period to satisfy (a) any prepetition operating and other expenses approved by the Court, (b) obligations incurred in the ongoing postpetition operations of the Debtor, and (c) any and all costs and expenses arising in connection with the administration of the Debtor's estate, on an interim basis and pending a final hearing from funds from Plan Funders; (ii) directing that the Debtor make adequate

12

protection payments provided for per the Budget and provide certain additional adequate protection to RBC; and (iii) scheduling a final hearing on the Motion to consider entry of a Final Order granting the relief requested in the Motion. RBC has consented to the Debtor's use of Cash Collateral as set forth in the Motion and pursuant to the Budget and the Interim Order.

5. Unanimous Consent of Board of Directors

- In lieu of a meeting of the Debtor's board of directors (the "Board"), the Board unanimously consented and agreed to the adoption of certain resolutions authorizing the Debtor to file this chapter 11 case, take certain action and seek related relief in connection therewith.

6. Declaration of Jacob Abikzer

- The Declaration is filed pursuant to Rule 1007-2 of the Local Bankruptcy Rules and is intended to provide a summary overview of the Debtor and this chapter 11 case. The Declaration provides an overview of the Debtor's business, background, capital structure, and the circumstances giving rise to the commencement of this chapter 11 case. The Declaration also summarizes the relief requested in each of the First Day Pleadings and lists the schedules and information required by Local Bankruptcy Rule 1007-2.

7. Bar Date Motion and Order

- By this Motion, the Debtor seeks entry of an order establishing December 23, 2010 at 5:00 p.m. (EST) as a bar date to file proofs of claim in this case.

8. Garden City Retention Application and Order

- By this Application, the Debtor seeks entry of an order approving the retention and employment of The Garden City Group, Inc. as the claims agent for the Debtor in this case.

9. Schedules and Statement of Financial Affairs

- In accordance with the Bankruptcy Code and the Local Rules, the Debtor filed its Schedules and Statement of Financial Affairs listing, *inter alia*, the Debtor's assets, liabilities and other financial information as well as sources of income, transfers of property and lawsuits by creditors.

10. Blank Rome Retention Application and Order

13

- By this Application, the Debtor seeks entry of an order approving the retention and employment of Blank Rome LLP as bankruptcy counsel for the Debtor in this case.

11. Cash Management Motion (Interim and Final Orders)

- By this Motion, the Debtor seeks authorization to continue using its existing bank accounts and cash management systems.

12. Utilities Motion and Final Order

- By this Motion, the Debtor seeks approval of adequate assurance of payments to utilities, and approval of procedures to determine the amount of adequate assurance payments.

13. Proposed $130 Million Dollar Exit Facility Financing Term Sheet and Plan Support Agreement with RBC

- The Exit Facility Plan Support Agreement with RBC acknowledges RBC's support for the Debtor's Plan of Reorganization.

14. Proposed $15 Million Dollar Equity Commitment Agreement from NL

- The Equity Commitment Agreement from NL confirms that NL will contribute funds of not less than $15 million to pay down the secured loan held by RBC and fund certain other payments.

15. Plan Support Agreement – Existing Equity

- The Plan Support Agreement – Existing Equity acknowledges the treatment and support for the Debtor's Plan of Reorganization by the direct and indirect members of the Debtor.

16. Cash Flow Projections for Disclosure Statement

- The Cash Flow Projections filed with the Debtor's Disclosure Statement was prepared by the Debtor with the assistance of its financial advisors.

17. Liquidation Analysis for Disclosure Statement

- The Liquidation Analysis filed with the Debtor's Disclosure Statement was prepared by the Debtor's with the assistance of its financial advisors.

18. Motion to Pay Pre Petition Indebtedness

- Motion to pay ordinary course pre petition indebtedness.

IV.

## INFORMATION REQUIRED BY LOCAL BANKRUPT Y RULE 1007-2

29.     Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

30.     In accordance with Local Bankruptcy Rule 1007-2(a)(3), and to the best of my knowledge, information, and belief, no creditors' committees were organized prior to the Commencement Date.

31.     In accordance with Local Bankruptcy Rule 1007-2(a)(4), Schedule 1 hereto is a list of the names, addresses, and where available, telephone numbers of the creditors holding the 20 largest unsecured claims (excluding insiders) against the Debtor.  Such list includes the amount of the claim, the nature of the claim and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured, subject, however, to the reservations of rights stated on Schedule 1 regarding, among other things, the actual validity of any such claims.

32.     In accordance with Local Bankruptcy Rule 1007-2(a)(5), Schedule 2 is a list of the names and addresses for the holders of record of such secured claims.  Such list includes the amount of the claim, an estimate of the value of the collateral, and whether the claim or lien is disputed, subject, however, to the reservations of rights stated on Schedule 2.

33.     In accordance with Local Bankruptcy Rule 1007-2(a)(6), Schedule 3 hereto provides a summary of the Debtor's assets and liabilities.

34.     In accordance with Local Bankruptcy Rule 1007-2(a)(7), the Debtor has not issued securities that are publicly held.

35. In accordance with Local Bankruptcy Rule 1007-2(a)(8), Schedule 4 hereto is a list of the Debtor's property not in the Debtor's possession, including property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

36. In accordance with Local Bankruptcy Rule 1007-2(a)(9), Schedule 5 hereto is a list of the premises owned, leased, or held under other arrangement, from which the Debtor operate its business.

37. In accordance with Local Bankruptcy Rule 1007-2(a)(10), Schedule 6 hereto provides the location of the Debtor's substantial assets, and the location of its books and records. To the best of my knowledge, information, and belief, the Debtor does not hold any assets outside the territorial limits of the United States that are of more than *de minimis* value.

38. In accordance with Local Bankruptcy Rule 1007-2(a)(11), Schedule 7 hereto is a list of litigation commenced against the Debtor.

39. In accordance with Local Bankruptcy Rule 1007-2(a)(12), Schedule 8 hereto contains the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

40. The Debtor intends to continue to operate as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

41. In accordance with Local Bankruptcy Rule 1007-2(b)(2)(A), Schedule 10 hereto contains the amounts to be paid to the Debtor's officers, directors, and stockholders for services for the 30-day period following the commencement of the Debtor's chapter 11 case.

134588.00401/6948198v.19

42. In accordance with Local Bankruptcy Rule 1007-2(b)(3), Schedule 11 hereto contains the estimated cash receipts and disbursements and net cash gain or loss for the 30-day period following the commencement of the Debtor's chapter 11 case.

43. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

134588.00401/6948198v.19

Accordingly, I respectfully request that the Court grant all of relief requested in the First Day Pleadings and such other and further relief as may be just.

New York, New York  
November 15, 2010

Metropolitan 885 Third Avenue Leasehold, LLC, a Delaware limited liability company, Debtor

By: Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz LLC, its sole member

    By: Metropolitan 885 Third Avenue Leasehold Holdings LLC, a Delaware limited liability company, its sole member

        By: Metropolitan 885 Third Avenue LLC, a Delaware limited liability company, its managing member

            By: Metropolitan Real Estate Investors, LLC, a California limited liability company, its managing member

                By: */s/ Jacob Abikzer*  
                Name: Jacob Abikzer  
                Title: Member

**EXHIBIT A**

Metropolitan 885 Third Avenue Leasehold LLC, a Delaware limited liability company ("Debtor")
Debtor
100% Owner
Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz LLC, a Delaware limited liability company ("Parent")
Parent
100% Owner
Metropolitan 885 Third Avenue Leasehold Holdings LLC, a Delaware limited liability company ("MTAL")
MTAL
Managing Member
Metropolitan 885 Third Avenue LLC, Delaware limited liability company ("Metropolitan")
Metropolitan
Managing Member
Metropolitan Real Estate Investors, LLC, a California limited liability company ("Management Company")
Management Company