BLANK ROME LLP
Attorneys for Debtor
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Marc E. Richards
Joel C. Shapiro
Scott F. Budzenski

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------  x
In re:                                                           :
                                                                    :
METROPOLITAN 885 THIRD AVENUE      :     Case No. [                    ]
LEASEHOLD, LLC,

                                                                    :     Chapter 11 Case

                         Debtor.                            :
-------------------------------------------------------  x

<u>DEBTOR'S PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION</u>

**BLANK ROME LLP**

Marc E. Richards
Scott F. Budzenski
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
Telephone: (212) 885-5000)
Facsimile: (212) 885-5001

and

Joel C. Shapiro, Esquire
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Attorneys for Debtor*

Dated: November 12, 2010

# TABLE OF CONTENTS

PAGE

ARTICLE I      DEFINITIONS..............................................................................................1

   1.1     Scope of Definitions.................................................................................1

ARTICLE II     METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND
                  GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND
                  INTERESTS .........................................................................................9

   2.1     General Rules of Classification..................................................................9
   2.2     Administrative Claims, Priority Tax Claims and Fee Claims.............................9
   2.3     Bar Date for Administrative Claims ............................................................9
   2.4     Bar Date for Fee Claims..........................................................................9
   2.5     Classification of Claims and Interests .......................................................10

ARTICLE III    TREATMENT OF UNCLASSIFIED CLAIMS..............................................10

   3.1     Administrative Claims............................................................................10
   3.2     Priority Tax Claims ...............................................................................10
   3.3     Fee Claims..........................................................................................10

ARTICLE IV    TREATMENT OF UNIMPAIRED CLASSES ...............................................11

   4.1     Class 1 Other Priority Claims ..................................................................11
   4.2     Class 3 General Unsecured Claims ...........................................................11
   4.3     Reservation of Rights.............................................................................11

ARTICLE V     TREATMENT OF IMPAIRED CLASSES....................................................11

   5.1     Class 2 RBC Claim ...............................................................................11
   5.2     Class 4 MJM Interest.............................................................................12

ARTICLE VI    MEANS FOR IMPLEMENTATION OF THE PLAN.....................................12

   6.1     Corporate Action ..................................................................................12
   6.2     Exit Financing and Equity Commitments ...................................................12
   6.3     Revesting............................................................................................13

ARTICLE VII   RELEASES.........................................................................................13

   7.1     Releases by the Debtor...........................................................................13
   7.2     Injunction ...........................................................................................14
   7.3     No Admissions .....................................................................................14

ARTICLE VIII  DISTRIBUTIONS UNDER THE PLAN .......................................................14

   8.1     Distributions for Claims Allowed as of the Effective Date .............................14
   8.2     Delivery of Distributions.........................................................................14
   8.3     Reserves for Disputed Administrative, Priority Tax and Other Priority Claims ........15
   8.4     Reserves for Disputed Claims ..................................................................15
   8.5     Claims Objection Deadline .....................................................................15
   8.6     Settlement of Disputed Claims.................................................................16

134588.00401/21900647v.20

| 8.7 | Unclaimed Property | 16 |
| 8.8 | Release of Liens | 16 |
| 8.9 | Withholding Taxes | 16 |
| 8.10 | Fractional Cents | 16 |
| 8.11 | Payments of Less than Twenty-Five Dollars | 17 |

ARTICLE IX  UNEXPIRED LEASES AND EXECUTORY CONTRACTS ......... 17

| 9.1 | Assumption of All Agreements | 17 |
| 9.2 | Claims for Damages | 17 |

ARTICLE X  CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ......... 18

| 10.1 | Conditions to Confirmation of the Plan | 18 |
| 10.2 | Conditions to Effectiveness of the Plan | 18 |
| 10.3 | Effect of Failure of Condition | 19 |

ARTICLE XI  RETENTION OF JURISDICTION ......... 19

| 11.1 | Jurisdiction | 19 |

ARTICLE XII  MISCELLANEOUS PROVISIONS ......... 21

| 12.1 | Pre-Confirmation Modification | 21 |
| 12.2 | Post-Confirmation Immaterial Modification | 21 |
| 12.3 | Post-Confirmation Material Modification | 21 |
| 12.4 | Withdrawal or Revocation of the Plan and Section 1129(b) Cram-Down | 21 |
| 12.5 | Payment of Statutory Fees | 22 |
| 12.6 | Successors and Assigns | 22 |
| 12.7 | Exculpation | 22 |
| 12.8 | Discharge | 23 |
| 12.9 | Confirmation Injunction | 23 |
| 12.10 | Comprehensive Settlement of Claims and Controversies | 24 |
| 12.11 | Preservation of Insurance | 24 |
| 12.12 | Cramdown | 24 |
| 12.13 | Governing Law | 24 |
| 12.14 | Notices | 24 |
| 12.15 | Saturday, Sunday or Legal Holiday | 26 |
| 12.16 | Exemption From Transfer Taxes | 26 |
| 12.17 | Severability | 26 |
| 12.18 | Headings | 26 |

CONFIRMATION REQUEST ......... 1

134588.00401/21900647v.20

# INTRODUCTION

Metropolitan 885 Third Avenue Leasehold, LLC, the above-captioned Debtor and Debtor in possession ("Debtor"), hereby proposes this Pre-Packaged Chapter 11 Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement[1] for risk factors and a summary and analysis of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XI of this Plan, the Debtor expressly reserves the right to alter, amend, supplement or modify this Plan, one or more times, before its substantial consummation.

## ARTICLE I

## DEFINITIONS

1.1  **Scope of Definitions**. As used in this Plan, the following terms shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2  "**Accrued**" shall mean an expense incurred but not yet billed for nor paid.

1.3  "**Administrative Claim**" shall mean a Claim under sections 503(b) (including, without limitation, all administrative claims under Section 503(b)(9) and 1114(e)(2) of the Bankruptcy Code or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(1) or 507(b) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case including, without limitation, any actual and necessary expenses of operating the businesses of the Debtor or preserving the estate incurred after the Petition Date, and any and all fees and expenses of Professionals Filed under sections 330, 331 or 503 of the Bankruptcy Code.

1.4  "**Administrative Claims Bar Date**" shall have the meaning set forth in section 2.3 of the Plan.

1.5  "**Administrative Claims Reserve**" shall have the meaning set forth in section 7.3 of the Plan.

1.6  "**Allowed Claim**" or "**Allowed Administrative Claim**" shall mean: (a) any Claim, proof of which is/was Filed with the Bankruptcy Court or the Debtor's court-appointed claims agent on or before the date designated by the Bankruptcy Court as of the last date(s) for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a

---

[1] All capitalized terms not defined in this introduction shall have the meanings set forth in Article I of this Plan.

Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court (allowing such Claim in whole or in part); (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan; or (c) a request for payment of an Administrative Claim, which is made before the Administrative Claims Bar Date, or otherwise has been deemed timely asserted under applicable law, and is an Administrative Claim as to which no objection to allowance thereof has been Filed within the applicable deadline pursuant to Section 2.3 of the Plan. Except as otherwise provided herein, in accordance with section 502(d) of the Bankruptcy Code, a Claim held by any party that is subject to an Avoidance Action shall not be an Allowed Claim until such time as a Final Order is entered by the Bankruptcy Court on the Avoidance Action. Except as otherwise specified in this Plan or a Final Order, the amount of an Allowed Claim shall not include interest on such Claim after the filing of the Chapter 11 Case.

1.7     "**Avoidance Actions**" shall mean any and all claims and causes of action of the Debtor, arising under the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549 and 550 thereof, but not including any claim or cause of action against the Professionals.

1.8     "**Ballot**" shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

1.9     "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et. seq., as in effect on the Petition Date, and as amended effective as of the Petition Date.

1.10    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Southern District of New York or such other court as may hereafter be granted jurisdiction over the Chapter 11 Case.

1.11    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure effective August 1, 1996 in accordance with the provisions of 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court, as in effect on the Petition Date, and is amended effective as of the Petition Date.

1.12    "**Bar Date**" shall mean December 23, 2010, the date set by the Bankruptcy Court as the last day to file proofs of Claim pursuant to the Bar Date Order to be entered by the Bankruptcy Court.

1.13    "**Business Day**" shall mean any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.14    "**Cash**" shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

134588.00401/21900647v.20

1.15    "**Chapter 11 Case**" shall mean the above-captioned chapter 11 case pending for the Debtor.

1.16    "**Claim**" shall mean a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.17    "**Class**" shall mean a category of holders of Claims or Interests, as classified pursuant to Article II of the Plan.

1.18    "**Class 3 Reserve Payment**" shall mean the sum of up to $1,000,000.00 plus the maximum amount required to pay the RD Claims, if any (as defined in Section 10.2(g) below) to the extent that the Class 3 General Unsecured Claims that were not incurred in the ordinary course of business and the RD Claims, if any, exceed $1,000,000.00, that shall be funded by NL on the Effective Date and utilized by Debtor to fund Allowed Class 3 Claims and the reserve for Disputed Class 3 Claims as provided in Section 8.4 of this Plan.

1.19    "**Committee**" shall mean the Official Committee of Unsecured Creditors, if any, appointed by the Office of the United States Trustee and as reconstituted from time to time and existing as of the Confirmation Date.

1.20    "**Confirmation**" shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.21    "**Confirmation Date**" shall mean the date of entry of an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.22    "**Confirmation Hearing**" shall mean the hearing to confirm the Plan.

1.23    "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.24    "**Creditor**" shall mean as defined in Section 101(10) of the Bankruptcy Code.

1.25    "**Debtor**" shall mean Metropolitan 885 Third Avenue Leasehold, LLC, a Delaware Limited Liability Company.

1.26    "**Deficiency Claim**" shall mean, with respect to a Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the value of the property owned or held by the Debtor that collateralizes the Claim.

1.27    "**Disclosure Statement**" shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.28    "**Disputed Claim**" or "**Disputed Interest**" shall mean any Claim or Interest, including any Administrative Claim, which has not become an Allowed Claim or Allowed Interest pursuant to the Plan or a Final Order.

1.29    "**Effective Date**" shall mean the first Business Day following the date on which each of the conditions set forth in sections 10.1 and 10.2 of the Plan have been satisfied or waived by each of the Debtor, the Plan Funders and RBC; provided that if a stay of the Confirmation Order is in effect then the Effective Date shall mean the first Business Day after such stay is no longer in effect.

1.30    "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.31    "**Equity Commitment Letter**" means that certain Equity Commitment Letter (with Exhibits) from NL to the Debtor dated November 15, 2010 and pertaining to the Plan Funding Equity Commitments, a copy of which is attached to the Plan Supplement.

1.32    "**Estate**" shall mean the estate of the Debtor.

1.33    "**Exit Facility Plan Support Agreement**" means that certain Exit Facility Plan Support Agreement (with Exhibits) from RBC to the Debtor dated November 15, 2010, a copy of which is attached to the Plan Supplement.

1.34    "**Fee Claim**" shall mean a claim under sections 327, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or reimbursement of expenses incurred in the Chapter 11 Case on or prior to the Effective Date which has been approved by a Final Order (including expenses of the members of the Committee, if any), provided, however, that the claims for compensation of Professionals employed by RBC shall not be considered Fee Claims for purposes hereof and shall be paid as Allowed Administrative Claims as set forth in 2.3 hereof.

1.35    "**Fee Claim Bar Date**" shall have the meaning set forth in section 2.4 of the Plan.

1.36    "**File**", "**Filed**", or "**Filing**" shall mean file, filed or filing with the United States Bankruptcy Court for the Southern District of New York, or with respect to proofs of claim, proofs timely and properly transmitted to Clerk of the Court or to the Debtor's Claims Agent to the extent one is appointed pursuant to Order of the Bankruptcy Court.

1.37    "**Final Cash Collateral Order**" shall mean the Order(s) (A) Authorizing Debtor to Utilize Cash Collateral and Grant Replacement Security Interests and Super Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 363 in favor of RBC; and (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362.

1.38    "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising competent jurisdiction over the subject matter and the parties which has not been reversed, amended or stayed and as to which (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review reconsideration or rehearing has expired.

1.39    "**General Unsecured Claim**" shall mean any unsecured, non-priority Claim, including, without limitation, any Indemnification Claim, that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Fee Claim, or Secured Claim.

1.40    "**GS**" shall mean Goldman, Sachs & Co.

1.41    "**Impaired**" shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.42    "**IRSA/MREI/REVAH Purchase Agreement**" shall mean the Interest Purchase Agreement dated as of the Petition Date among IRSA International LLC, Metropolitan Real Estate Investors LLC and Haim Revah.

1.43    "**IRSA Agreements**" shall mean collectively the IRSA/MREI/REVAH Interest Purchase Agreement and the Marciano/MREI/REVAH Interest Purchase Agreement, including all assignments and other agreements related thereto.

1.44    "**Indemnification Claims**" means Claims for indemnification or advancement.

1.45    "**Interest**" shall mean, with respect to the Debtor, any equity security or any other security or agreement granting rights to convert to, purchase, hold or own any equity security or membership interests in Debtor as defined in section 101(16) of the Bankruptcy Code.

1.46    "**LLC Agreement**" shall mean that certain Amended and Restated Limited Liability Company Agreement of MTAL dated July 3, 2008, as amended.

1.47    "**Liens**" shall mean valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.48    "**Marciano/MREI/REVAH Purchase Agreement**" shall mean the Interest Purchase Agreement dated as of the Petition Date among Marciano Investment Group LLC, Metropolitan Real Estate Investors LLC and Haim Revah.

1.49    "**Members Agreement**" shall mean that certain Metropolitan 885 Third Avenue Leasehold Holdings LLC Members Agreement between Metropolitan 885 Third Avenue LLC and Goldman, Sachs & Co. dated November 15, 2010.

1.50    "**MJM**" shall mean Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz, LLC, a Delaware Limited Liability Company.

1.51    **"MJM Interests"** – means 100% of the membership interests of Debtor which are owned by MJM.

1.52    "**MJM Payment**" shall have the same meaning as the Minimum Payment (as defined in Section 3 of the Members Agreement) which, as of the Petition Date shall mean an amount equal to the sum of (i) $2,650,000 and (ii) the aggregate amount (as of the Effective Date) of the proceeds in that certain escrow account established pursuant to that certain Deposit Account Control Agreement dated as of August 25, 2008, by and among Wachovia Bank,

National Association, Metropolitan 885 Third Avenue, LLC and Goldman, Sachs & Co., which sum shall be paid to MJM on account of the extinguishment of the MJM Interest under this Plan and which shall be distributed by MJM to its members in accordance with the terms of the Members Agreement and LLC Agreement.

1.53    "**MTAL**" shall mean Metropolitan 885 Third Avenue Leasehold Holdings LLC.

1.54    "**New Membership Interests**" shall mean 100% of the newly authorized membership interests of Debtor, issued and distributed to the Plan Funders pursuant to the Plan.

1.55    "**NL**" shall mean New Lipstick LLC, a Delaware Limited Liability Company.

1.56    "**Other Priority Claim**" shall mean any Claim against the Debtor entitled to priority in payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim, Fee Claim or Priority Tax Claim.

1.57    "**Operating Agreement**" shall mean the amended and restated Operating Agreement for Reorganized Debtor that will be set forth in the Plan Supplement.

1.58    "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.59    "**Petition Date**" shall mean November 15, 2010, the date upon which the Debtor filed its petition under Chapter 11 of the Bankruptcy Code.

1.60    "**Plan**" shall mean this Prepackaged Chapter 11 Plan of Reorganization, all exhibits hereto and any amendments or modifications hereof made in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

1.61    "**Plan Expenses**" shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) the Debtor's and Reorganized Debtor's costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, and (ii) all fees payable pursuant to section 1930 of Title 28 of the United States Code and Section 3717 of Title 31 of the United States Code (collectively "Statutory Fees").

1.62    "**Plan Funders**" shall mean NL or its designee or nominee.

1.63    "**Plan Funding Equity Commitments**" shall mean the equity commitment of the Plan Funders in the aggregate committed amount of $15,000,000.00 plus the (i) amount of the MJM Payment, (ii) Class 3 Reserve Payment or the Class 3 Payment (as defined in the Equity Commitment Letter); and (iii) such other amounts as set forth in the Equity Commitment Letter.

1.64    "**Plan Supplement**" shall mean one or more supplemental appendices designated as the Plan Supplement filed with the Bankruptcy Court (no later than ten days prior to the Confirmation Hearing) that will contain, among other things, Equity Commitment Plan Support Agreement, Exit Facility Plan Support Agreement, Plan Support Agreement – Existing Equity, Operating Agreement, Liquidation Analysis, Projections and the designation of the Post-

Confirmation Officers and Managers of the Debtor.

1.65    "**Plan Support Agreement – Equity**" shall mean that certain Plan Support Agreement – Equity dated November [   ], 2010 in which the holders of MJM Interest and certain direct or indirect members of such holder reached certain agreements.

1.66    "**Priority Tax Claim**" shall mean any Claim for taxes against the Debtor entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.67    "**Preserved Avoidance Actions**" shall mean any and all Avoidance Actions but only to the extent that they would form the basis for or otherwise give rise to a claim for indemnification against Metropolitan Real Estate Investors LLC or Haim Revah under Article VIII of the IRSA Agreements and further provided that such Preserved Avoidance Actions do not include any Avoidance Actions against RBC.

1.68    "**Professionals**" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered to the Debtor prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.69    "**Property**" means all property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor, or acquired by the Debtor's estate, as defined in section 541 of the Bankruptcy Code.

1.70    "**Pro Rata**" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Allowed Claims and Disputed Claims, without duplication, in such Class.

1.71    "**Protected Parties**" shall have the meaning ascribed to such term in section 11.9 of the Plan.

1.72    "**RBC**" shall mean the Royal Bank of Canada, a Canadian Chartered Bank.

1.73    "**RBC Loan**" shall mean the pre-petition secured term loan from RBC in accordance with the terms of a certain Loan Agreement dated July 9, 2007, as amended in the aggregate principal amount of $210,000,000.00 as of the Petition Date plus interest, costs, fees, penalties and expenses.

1.74    "**RBC Mortgage**" shall mean the Amended, Restated Consolidated Leasehold Mortgage, Security Agreement Fixture Financing Statement and Assignment of Leases and Rents dated July 9, 2007, as amended, which granted to RBC a lien on and security interest in the Third Avenue Property.

1.75    "**Released Parties**" means (i) RBC, (ii) NL, (iii) MJM, (iv) MTAL and (v) the officers, directors and employees of the Debtor, and in the case of each of (i) - (iv) each such entities respective direct and indirect parents, subsidiaries and affiliates, together with each of

their respective shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants.

1.76    "**Reorganized Debtor**" shall mean Metropolitan 885 Third Avenue Leasehold LLC from and after the Effective Date, pursuant to the amended and restated Operating Agreement and other governance documents included in the Plan Supplement.

1.77    "**Schedules**" shall mean the Debtor's Schedules of Assets and Liabilities Filed pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.78    "**Secured Claim**" shall mean all or a portion of a Claim existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the Property securing such Claim.

1.79    "**Sponsor Member**" shall mean Metropolitan 885 Third Avenue LLC, a Delaware Limited Liability Company and the managing member of MTAL.

1.80    "**Tao-Menofim Agreements**" shall mean the Interest Purchase Agreements dated as of the Petition Date between Tao-Menofim, LLC and IRSA International LLC and Tao-Menofim, LLC and Marciano Investment Group LLC.

1.81    "**Third Avenue Property**" shall mean the Debtor's interests in that certain commercial property located at 885 Third Avenue, New York, including, without limitation, all of the Debtor's rights pursuant to those certain ground leases as follows (collectively the "**Ground Leases**"): (a) Parcel 1, 2 and 3:  that certain Ground Lease dated as of July 9, 2007, between 885 Third Fee LLC and GKK 885 Third LLC, collectively, as lessor, and Debtor, as lessee, evidenced by that certain Memorandum of Ground Lease recorded August 7, 2007 as CRFN 2007000407290, as to the property described therein; and (b) Parcel 4:  that certain Ground Sub-Sublease dated as of July 9, 2007 between 885 Third Fee LLC and GKK 885 Third LLC, collectively, as lessor, and Debtor, as lessee, evidenced by that certain Memorandum of Ground Sub-Sublease recorded August 7, 2007 as CRFN 200700040792, as to the property described therein, together with the Debtor's interest in any of the improvements on such property and in all furniture, fixtures, equipment and all leases, rents, issues and profits related thereto.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes, with respect to that claim, that Entity's successors, assigns and affiliates.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All Exhibits, as well as the Plan Supplement, are incorporated into and are a part of this

Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely filed in accordance with this Plan. Holders of Claims and Interests may obtain a copy of the filed Exhibits and Plan Supplement upon written request to the Debtor. Upon their filing, the Exhibits and Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours. The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     <u>General Rules of Classification</u>.  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

2.2     <u>Administrative Claims, Priority Tax Claims and Fee Claims</u>. Administrative Claims, Priority Tax Claims, and Fee Claims have not been classified and are excluded from the Classes set forth in Article III of the Plan in accordance with section 1l23(a)(l) of the Bankruptcy Code.

2.3     <u>Bar Date for Administrative Claims</u>. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtor, and its counsel, no later than thirty (30) days after the Effective Date (the "<u>Administrative Claim Bar Date</u>"); provided, however that the costs and expenses of RBC (including but not limited to reasonable attorney's fees, fees of third party consultants and reports, title insurance premiums and all other similar costs or expenses, but subject to the caps set forth in the Exit Facility Plan Support Agreement) hereinafter "RBC Expenses", shall constitute an Allowed Administrative Claim and shall be paid by the Debtor from amounts provided by the Plan Funders without the necessity to file a proof of claim or file any application to or receive any approval from the Bankruptcy Court. Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtor and its counsel, and the party requesting payment of an Administrative Claim within thirty (30) days after the filing of such request for payment.  All Post-Petition ordinary course administrative claims shall be paid in the ordinary course during the Chapter 11 Case.

2.4     <u>Bar Date for Fee Claims</u>. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date, must be filed and served on the Reorganized Debtor and its counsel no later than twenty (20) days after the Effective Date

(the "Fee Claim Bar Date"). Any Professional that is required to file and serve a request for payment of a Fee Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in distributions under the Plan on account thereof. Objections to Fee Claims must be filed and served on the Plan Administrator, its counsel, and the requesting party by twenty (20) days after the filing of the applicable request for payment of the Fee Claim.

2.5     Classification of Claims and Interests. The following is the designation of the Classes of Claims and Interests under the Plan:

(a)     Class 1 Claims shall consist of all Other Priority Claims.

(b)     Class 2 Claims shall consist of the RBC Claim.

(c)     Class 3 Claims shall consist of all General Unsecured Claims.

(d)     Class 4 Interests shall consist of the MJM Interests.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1     Administrative Claims. Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Administrative Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Administrative Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Administrative Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim and the Debtor prior to the Effective Date and the Reorganized Debtor following the Effective Date might otherwise agree. The total amount of unpaid Allowed Administrative Claims shall be subject to approval by the Bankruptcy Court.  Notwithstanding the foregoing, (i) RBC Expenses shall constitute an Allowed Administrative Claim and shall be paid by the Debtor from amounts provided by the Plan Funders without the necessity to file a proof of claim or file any application to or receive any approval from the Bankruptcy Court; and (ii) the Statutory Fees shall be paid in cash as soon as practicable after the Effective Date.

3.2     Priority Tax Claims. Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtor prior to the Effective Date and the Reorganized Debtor following the Effective Date might otherwise agree, or (at the election of the Debtor or the Reorganized Debtor) (b) over a period of five (5) years from the Petition Date in equal monthly installments of principal plus interest at the rate of six percent per annum.

3.3     Fee Claims. Each holder of an Allowed Fee Claim shall receive 100% of the unpaid amount of such Allowed Fee Claim in Cash after such Fee Claim becomes an Allowed

134588.00401/21900647v.20

Claim.

## ARTICLE IV

## TREATMENT OF UNIMPAIRED CLASSES

4.1     Class 1 Other Priority Claims. Each holder of an Allowed Other Priority Claim shall be paid in respect of such Allowed Other Priority Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Other Priority Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Other Priority Claim, or (b) such lesser amount as the holder of such Allowed Other Priority Claim and the Debtor prior to the Effective Date and the Reorganized Debtor following the Effective Date might otherwise agree. The holder of a Claim in this Class is not impaired and, therefore, not entitled to vote and is conclusively presumed to accept this Plan.

4.2     Class 3 General Unsecured Claims. This Class shall consist of General Unsecured Claims other than Unsecured Deficiency Claim of RBC.  Each holder of a General Unsecured Claim shall receive cash on the Effective Date or as soon as practicable thereafter in the full amount of their Allowed Claim (without interest).  The holders of Claims in this Class are not impaired and therefore not entitled to vote and are conclusively deemed to have accepted the Plan.

4.3     Reservation of Rights. Nothing contained herein shall be deemed to limit the right of the Debtor or the United States Trustee to object to any Administrative Claims (including Fee Claims), Priority Claims, Other Priority Claims, Unsecured Claims and Secured Claims filed in this Chapter 11 Case other than the RBC Claim and RBC Expenses which are deemed Allowed and not subject to objection.  Nothing contained herein shall effect the Debtor's or Reorganized Debtor's rights and defenses both legal and equitable, with respect to all members of any Unimpaired Classes including but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments asserted against members of any Unimpaired Classes subject to the releases granted herein.

## ARTICLE V

## TREATMENT OF IMPAIRED CLASSES

5.1     Class 2 RBC Claim.  RBC shall have an Allowed Secured Claim in respect of the RBC Loan in the amount of $210,000,000 plus interest, costs, fees, penalties and expenses (collectively "RBC Claim").  RBC has agreed that solely in connection with the confirmation of this Plan, such claim shall be reduced to the total amount of $130,000,000.00 ("Reduced RBC Allowed Secured Claim") as of the Effective Date and shall continue to be secured by a first lien on the Third Avenue Property under the terms of the RBC Mortgage, as amended by the documents set forth in the Exit Facility Plan Support Agreement.   All adequate protection payments made to RBC under the Final Cash Collateral Order prior to the Effective Date with respect to (i) escrowed real estate tax payments; and (ii) escrowed insurance payments, as well as all unapplied pre-petition escrowed payments relating to the same shall be applied by RBC

11

towards the 2010/2011 real estate and insurance payments due and owing to third parties. All adequate protection payments made to RBC other than as set forth in (i) and (ii) herein as well as the capital expenditure reserve, tenant improvement and leasing commission reserves and the tenant security deposit account (to the extent the same are in existence as of the Petition Date under the RBC Loan) shall be applied by RBC to reduce the RBC Claim and shall not be applied to reduce the Reduced RBC Secured Claim. The Reduced RBC Allowed Secured Claim shall be repaid as follows: (a) the sum of $15,000,000.00 to be paid on the Effective Date ("Initial RBC Payment"); and (b) the balance of $115,000,000.00 to be repaid in accordance with the terms and conditions of the agreements attached to the Exit Facility Plan Support Agreement. The balance of the RBC Claim in the amount of approximately $80,000,000.00 plus interest, costs, fees, penalties and expenses ("RBC Allowed Deficiency Claim"), solely in connection with the Confirmation and Effective Date of this Plan, shall be deemed waived and extinguished on the Effective Date. RBC reserves the right to assert and vote the RBC Deficiency Claim as a Class 3 Claim but only in the event (i) the Debtor amends this Plan and seeks to solicit the votes of Class 3 Creditors and/or seeks to utilize the cram-down provisions of Section 1129(b) as to Class 3 Unsecured Creditors; or (ii) the Plan does not comply with the Exit Facility Plan Support Agreement and the documents related thereto (without limiting RBC's rights under the Exit Facility Plan Support Agreement and the documents related thereto). RBC is impaired and therefore, is entitled to vote.

5.2     Class 4 MJM Interest. This Class shall consist of the MJM Interest. On the Effective Date, in consideration for the payments described herein, the Class 4 MJM Interest (and all warrants or options relating thereto, if any) shall be deemed cancelled, null and void and of no force and effect. In consideration for such extinguishment of all Class 4 Interests: (i) MJM shall receive the MJM Payment on the Effective Date; (ii) MJM shall distribute the MJM Payment to MTAL; and (iii) MTAL shall distribute the MJM Payment to the members of MTAL pursuant to the provisions of the LLC Agreement, such distributions having been a condition to the granting of consent to the Filing of the Plan, without which such Filing could not have been made. Class 4 Interests are impaired and therefore, are entitled to vote.

ARTICLE VI

**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.1     Corporate Action. On the Effective Date and automatically and without further action, (i) each existing officer of the Debtor will be deemed to have resigned, (ii) the new board members/officers of the Reorganized Debtor shall be those identified in the Plan Supplement, and (iii) the Reorganized Debtor shall be authorized, empowered and directed to take all such actions and measures necessary to implement and administer the terms and conditions of the Plan. The Operating Agreement will be amended as of the Effective Date to the extent necessary to incorporate the provisions of the Plan and to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code. The rights and interests of the New Membership Interests shall be governed by and controlled pursuant to the terms and conditions of the Operating Agreement which shall be included in and filed with the Plan Supplement.

6.2     Exit Financing and Equity Commitments. Except as expressly set forth in the

Plan, or the Plan Funding Equity Commitments, the proceeds of the Plan Funding Equity Commitments shall be used for general working capital and capital expenditures of the Reorganized Debtor, to pay the Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Claims, Allowed Other Priority Claims, Allowed General Unsecured Claims, the MJM Payment and the initial payment of $15,000,000 under the Reduced RBC Allowed Secured Claim. In consideration for meeting its commitments under the Plan Funding Equity Commitments, the Plan Funders shall receive 100% of the New Membership Interests in the Reorganized Debtor. Notwithstanding anything herein to the contrary, the portion of the Plan Funding Equity Commitments constituting the MJM Payment shall only be used for the purpose described in Section 5.2 of the Plan.

6.3     _Revesting_. Except as otherwise provided for in the Plan or the Confirmation Order, on the Effective Date, without any further action, the Reorganized Debtor will be vested with all of the Property of the Estate (including the Preserved Avoidance Actions and all causes of action and claims other than the Avoidance Actions or any other claims or causes of action released under the terms of the Plan), free and clear of all Claims, Liens and Interests, and shall have all of the powers of a limited liability company under applicable law; provided, however, the foregoing shall not apply to the Reduced RBC Allowed Secured Claim and the liens granted in connection therewith described in Class 2 above which shall survive confirmation of the Plan. As of the Effective Date, the Reorganized Debtor may operate its business and use, acquire and dispose of property and settle and compromise claims or interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

ARTICLE VII

**RELEASES**

7.1     **Releases by the Debtor.** Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration provided by each of the Released Parties (which consideration includes, without limitation, the investment in respect of the New Membership Interests, the discharge of a substantial portion of the RBC Loan, and the provision of the services of the Released Parties in facilitating the expeditious implementation of the transactions contemplated hereby), on the Effective Date and effective as of the Effective Date, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all direct, indirect or derivative claims, obligations, rights, suits, judgments, Liens, damages, causes of action, remedies, liabilities, claims or rights of contribution and indemnification, and all other claims, causes of action, controversies of every type, kind, nature, description or character whatsoever, including any derivative claims asserted on behalf of the Estate, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, at equity, whether for tort, fraud, contract or otherwise, that the Debtor would have been legally entitled to assert, including, but not limited to, any claim or cause of action arising from or relating to the Debtor, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest of the Released Parties that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place, in each

case to the extent incurred on or prior to the Effective Date, other than in each case claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in this Section 7.1 of the Plan, nothing contained herein or elsewhere in this Plan or in the Plan Supplement shall alter, affect, impair or constitute a waiver of the indemnification obligations of Metropolitan Real Estate Investors LLC or Mr. Haim Revah under Article VIII of the IRSA Agreements or the Preserved Avoidance Actions, which indemnification obligations shall survive and not be released hereunder.

7.2     Injunction. On the Effective Date, the Debtor and the Reorganized Debtor shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind, including asserting any setoff, right of subrogation, contribution, indemnification or recoupment of any kind, directly or indirectly, or proceeding in any manner in any place inconsistent with the releases granted by the Debtor and the Estate to the Released Parties pursuant to the Plan. The Confirmation Order shall specifically provide for such injunction.

7.3     No Admissions. The releases and injunctions granted in favor of the Released Parties are integral parts of the Plan and are necessary to confirm the Plan. The fact that the Plan Funders are providing the Plan Funding Equity Commitments in return for the releases shall not be construed as an admission or evidence that the Releasors have any claims against RBC, MJM, MTAL or the Plan Funders, or any managers or officers of Debtor, or any board member affiliated with any of the other Released Parties. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan or the Confirmation Order shall limit the liability of professionals retained by the Debtor pursuant to N.Y. Comp. Codes R&Regs. Tit. 22 § 1200.8 and Rule 1.8(h)(1) of the Rules of Professional Conduct (2009).

## ARTICLE VIII

## DISTRIBUTIONS UNDER THE PLAN.

8.1     Distributions for Claims Allowed as of the Effective Date. Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day. The Reorganized Debtor shall make all distributions required to be made under the Plan.

8.2     Delivery of Distributions. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Reorganized Debtor or its agents, unless the Debtor has been notified in writing of a change of address, including by the filing of a proof of claim or Administrative Claim request that contains an address for a holder of a Claim different from the address for such holder reflected on any Schedule.

14

8.3     Reserves for Disputed Administrative, Priority Tax and Other Priority Claims. On or before the Effective Date, the Reorganized Debtor (with funds provided by the Plan Funders for such purpose) shall establish and maintain a reserve in an amount equal to all Disputed Administrative Claims, Disputed Priority Tax Claims and Disputed Other Priority Claims, if any, in an amount equal to what would be distributed to holders of Disputed Administrative, Disputed Priority Tax, and Disputed Other Priority Claims if their Disputed Claims have been deemed Allowed Claims on the Effective Date or on the Administrative Claims Bar Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Reorganized Debtor. With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Reorganized Debtor to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining after all Disputed Administrative, Disputed Priority Tax, and Disputed Other Priority Claims have been resolved and distributions made in accordance with the Plan, shall be released and distributed to Plan Funders (and not Reorganized Debtor). No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or agreement of the parties.

8.4     Reserves for Disputed Claims.  On or before the Effective Date, the Reorganized Debtor shall establish and maintain a reserve ("Class 3 Disputed Claim Reserve") for all Class 3 Disputed Claims in an amount not to exceed the Class 3 Reserve Payment and from the amounts provided by Plan Funders for such purpose. For purposes of establishing a reserve for Class 3 Disputed Claims, Cash will be set aside as soon as practicable after the Effective Date equal to the amount that would have been distributed to the holders of Class 3 Disputed Claims had their Class 3 Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court. With respect to such Class 3 Disputed Claims, if, when, and to the extent any such Class 3 Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Reorganized Debtor to the Claimant on the first business day following the end of the calendar quarter in which the Class 3 Disputed Claim becomes an Allowed Claim (or earlier in the discretion of the Reorganized Debtor) and in a manner thereafter consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining in the Class 3 Disputed Claim Reserve after all Class 3 Disputed Claims have been resolved and distributions made in accordance with the Plan, shall be released and remitted to Plan Funders (and not to Reorganized Debtor).  No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order. No payments or distributions shall be made with respect to post-Petition Date interest accruing on any Claim. No payments or distributions shall be made with respect to Allowed Claims in an amount in excess of such Allowed Claims.

8.5     Claims Objection Deadline.  Objections to Claims shall be filed and served upon each affected Creditor by the Reorganized Debtor no later than ninety (90) days after the Effective Date ("Objection Deadline"), provided however, that the  Objection Deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor, without notice or hearing, for up to an additional 120 days thereafter.  The Objection Deadline shall automatically be extended without further order of the Court during the time period following the filing of the extension motion until such time as the Court enters an order granting or denying the requested

extension. Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of a Claim filed after the Confirmation Date shall be automatically disallowed as a late filed Claim, without any action by the Reorganized Debtor, unless and until the party filing such Claim obtains the written consent of the Reorganized Debtor or obtains an order of the Bankruptcy Court upon notice to the Reorganized Debtor that permits the late filing of the Claim, and the holder of such disallowed Claim shall be forever barred from asserting such Claim against the Debtor, the Estate or Property, Reorganized Debtor or their property. In the event any proof of claim is permitted to be filed after the Confirmation Date pursuant to an order of the Bankruptcy Court then, the Reorganized Debtor shall have sixty (60) days from the filing of such proof of claim or order to object to such Claim, which deadline maybe extended by the Bankruptcy Court upon motion of the Reorganized Debtor with or without notice or a hearing.

8.6     Settlement of Disputed Claims. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent such approval is not necessary as provided in this section. After the Effective Date, and subject to the terms of this Plan, the Reorganized Debtor may settle any Disputed Claim where the result of the settlement or compromise is an Allowed Claim in an amount of $100,000 or less without providing any notice or obtaining an order from the Bankruptcy Court. All proposed settlements of Disputed Claims where the amount to be settled or compromised exceeds $100,000 shall be subject to the approval of the Bankruptcy Court after notice and an opportunity for a hearing.

8.7     Unclaimed Property. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder of an Allowed Claim or Interest entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Reorganized Debtor to be distributed Pro Rata to holders of Allowed Claims in such Class in accordance with this Plan, or if all Allowed Claims in such Class have been satisfied or reserved for in accordance with the Plan, then such unclaimed property will be distributed to the Reorganized Debtor.

8.8     Release of Liens.  The Liens securing the Reduced RBC Allowed Secured Claim shall survive Confirmation and shall remain valid, enforceable and perfected Liens against property of the Reorganized Debtor.  On the Effective Date and except as expressly set forth in this Plan, all other mortgages, deeds of trust, Liens or other security interests against the Property of the Debtor's estate (or the MJM Interests) shall be released and forever discharged, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to Reorganized Debtor and its successors and assigns.

8.9     Withholding Taxes.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

8.10     Fractional Cents.  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down

of such fraction to the nearest whole cent.

8.11    Payments of Less than Twenty-Five Dollars. If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty-five ($25.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Reorganized Debtor shall not be required to make such payment and such funds shall be otherwise distributed to holders of Allowed Claims in such Class in accordance with the Plan, or if all Allowed Claims in such Class have been satisfied or reserved for in accordance with the Plan, then such excess fractional dollars will be distributed to the Reorganized Debtor.

ARTICLE IX

UNEXPIRED LEASES AND EXECUTORY CONTRACTS

9.1    Assumption of All Agreements. Any and all pre-petition leases or executory contracts (and not otherwise previously rejected or the subject of a motion to reject pending on the Confirmation Date), shall be deemed assumed by the Debtor effective as of the Confirmation Date, but subject to the occurrence of the Effective Date. Without limiting the forgoing, on the Effective Date, the Ground Leases and all other leases of non-residential property with numerous tenants shall be deemed assumed by the Reorganized Debtor and the Reorganized Debtor shall continue to maintain custody and control of all security deposits posted by tenants in accordance with the terms of their leases and applicable non-bankruptcy law. Notwithstanding the foregoing, the Plan Funders may designate executory contracts that are to be rejected by the Debtor (but excluding the Ground Leases and leases of non-residential property with numerous tenants all of which shall be assumed by the Debtor, hereinafter "Core Contracts") no later than five (5) days prior to the Confirmation Hearing and Debtor shall promptly file such designation, if any, with the Bankruptcy Court and notify all affected counterparties. Any undisputed cure payments shall be paid on the Effective Date of the Plan with any disputed cure claims to be paid upon further agreement of the parties or further order of the Bankruptcy Court. Except for the Core Contracts, the Reorganized Debtor reserve the right to reject any executory contract within 3 days following the entry of an order of the Bankruptcy Court fixing the disputed cure amounts for such contract in which case such contract shall then be deemed to have been rejected as of the Confirmation Date.

9.2    Claims for Damages. All proofs of claim with respect to Claims arising from the rejection of executory contracts or leases, if any, shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of Effective Date. All proofs of claim with respect to Claims arising from the rejection of executory contracts shall be treated as Class 3 General Unsecured Claims, as applicable, for purposes of a distribution pursuant to the Plan, unless and until the Person or Entity asserting such Claim obtains an order of the Bankruptcy Court upon notice to the Debtor, that allows the Claims in another Class under the Plan. Unless otherwise permitted by Final Order, any proof of claim that is not filed before the earlier of the Bar Date or the Confirmation Hearing (other than those Claims arising from the rejection of executory contracts or leases which may be filed within thirty (30) days after mailing of the notice of Effective Date as set forth above) shall automatically be disallowed as a late filed Claim, without any action by the

Reorganized Debtor, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtor, the Estate, the Reorganized Debtor or property of Reorganized Debtor.

## ARTICLE X

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

10.1    <u>Conditions to Confirmation of the Plan</u>.  The Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by the Debtor, the Plan Funders GS, and RBC:

(a)    The Confirmation Order shall be in form and substance satisfactory to the Debtor, GS, RBC and Plan Funders, which Confirmation Order shall approve all provisions, terms and conditions of the Plan, the Plan Supplement documents and the repayment of the Reduced RBC Secured Claim; and

(b)    No material amendments, modifications, supplements or alterations shall have been made to the Plan, any document contained in the Plan Supplement or any other document delivered in connection therewith, without the express written consent of the Debtor, RBC, GS and Plan Funders (which consent may be granted, withheld, or conditioned in their respective reasonable discretion).

10.2    <u>Conditions to Effectiveness of the Plan</u>. The Plan shall not become effective unless and until each of the following conditions has been satisfied in full or waived by each of the Debtor, the Plan Funders and RBC (but as to Subsections (b), (e), (f) and (h) below, waived by the Debtor and RBC, as to Subsection (f) below, waived by the Debtor, RBC and GS and as to Subsection (a) below, waived by Debtor, RBC, GS and Plan Funders):

(a)    The Bankruptcy Court shall have entered the Confirmation Order by March 31, 2011 (or such other date as agreed to by Debtor, Plan Funders and RBC), the same shall be in full force and effect and not be subject to any stay or injunction and such Order shall be in form and substance satisfactory to the Debtor, GS, RBC and Plan Funders;

(b)    All escrow and reserve accounts provided for in the Plan have been adequately funded;

(c)    All conditions precedent to the repayment of the Reduced RBC Allowed Secured Claim shall have been satisfied or otherwise waived by RBC;

(d)    All conditions to the obligation of the Plan Funders to fund the Plan Funders Consideration shall have been satisfied or otherwise waived by the Plan Funders;

(e)    The Plan Funders shall have funded their equity commitments under the terms of the Equity Commitment Plan Support Agreement simultaneously

with the other transactions to occur on the Effective Date;

(f)     MJM shall have received the MJM Payment, subject to the distribution provisions of Section 5.2 of the Plan;

(g)     Class 3 General Unsecured Claims that were not incurred in the ordinary course that are filed by the Bar Date (plus those set forth on the Debtor's Schedules, as adjusted to avoid duplication) shall not exceed the sum of $1,000,000.00 plus the maximum amount of all potential rejection damage claims, if any, that arise because of the exercise of Plan Funder's rights under Section 9.1 of this Plan ("RD Claims") to the extent that such Class 3 General Unsecured Claims and RD Claims, if any, exceed $1,000,000, as determined by the Plan Funders and RBC in their reasonable discretion; and

(h)     The Initial RBC Payment and the RBC Expenses shall have been received by RBC.

Each of the conditions set forth in Section 10.2 above may be waived in whole or in part by the Debtor (with the consent of RBC and Plan Funders, such consent not to be unreasonably withheld) and with the consent of GS as to the subsections (a) and (f) above without notice or a hearing.

10.3    _Effect of Failure of Condition_.  In the event that the conditions specified above have not occurred on or before sixty (60) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by the Debtor or any party in interest and an opportunity for parties in interest to be heard.

ARTICLE XI

**RETENTION OF JURISDICTION**

11.1    _Jurisdiction_.  Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Reorganized Debtor, as the case may be, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     _Claims_.  To determine the allowance, extent, classification, or priority of Claims against the Debtor upon objection by the Reorganized Debtor or Plan Funders;

(b)     _Injunction, etc_. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation,

19

execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity;

(c)     Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in the Plan;

(d)     Certain Priority Claims.  To determine the allowance, extent and classification of any Priority Tax Claims, Other Priority Claims, Administrative Claims or any request for payment of an Administrative Claim;

(e)     Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

(f)     Executory Contracts and Unexpired Leases.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance and extent of any Claims resulting from the rejection of executory contracts and unexpired leases;

(g)     Actions.  To determine all applications, motions, adversary proceedings (including any Preserved Avoidance Actions), contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Case by or on behalf of the Debtor and Reorganized Debtor;

(h)     General Matters. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or other applicable law;

(i)     Plan Modification.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(j)     Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

(k)     Protect Property.  To protect the Property of the Debtor and Reorganized

Debtor from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan or to determine a purchaser's exclusive ownership of claims and causes of actions retained under this Plan;

(l)     <u>Abandonment of Property</u>.  To hear and determine matters pertaining to abandonment of Property of the Estate;

(m)     <u>Implementation of Confirmation Order</u>.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

(n)     <u>Final Order</u>.  To enter a final order closing the Chapter 11 Case.

ARTICLE XII

**MISCELLANEOUS PROVISIONS**

12.1     <u>Pre-Confirmation Modification</u>.  On notice to and opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by the Debtor before the Confirmation Date as provided in section 1127 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that any such amendment or modification of the Plan must be approved in writing by the Plan Funders in accordance with the Equity Commitment Letter, and GS and RBC in accordance with the provisions of the Plan Support Agreement – Equity.

12.2     <u>Post-Confirmation Immaterial Modification</u>.  With the approval of the Bankruptcy Court and on notice to and an opportunity to be heard by the United States Trustee and without notice to holders of Claims and Interests, the Debtor or Reorganized Debtor may, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan; <u>provided</u>, <u>however</u>, that any such amendment or modification of the Plan must be approved in writing by the Plan Funders, GS and RBC.

12.3     <u>Post-Confirmation Material Modification</u>.  On notice to and an opportunity to be heard by the United States Trustee, the Plan may be altered or amended after the Confirmation Date by the Reorganized Debtor in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing and otherwise meets the requirements of section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Plan Funders, RBC and GS.

12.4     <u>Withdrawal or Revocation of the Plan and Section 1129(b) Cram-Down</u>.  The Debtor (with the consent of RBC) reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or to seek to use the cram down provisions of Section 1129(b) (after amending this Plan) as to Class 3 Creditors in the event that Section 10.2(f) of this Plan is not satisfied. If the Debtor withdraws this Plan or if confirmation or consummation of the Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or

21

compromise embodied in this Plan (including the allowance, fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by this Plan, the Equity Commitment Letter Agreement shall terminate and be of no further force or effect in the case of a withdrawal and/or revocation of the Plan (but not in the case where Section 1129(b) cram-down is being utilized as to Class 3 creditors in which case the Equity Commitment Letter shall remain in full force and effect in accordance with its terms) and any document or agreement executed pursuant to this Plan shall be deemed null and void and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of Debtor or any other Person or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.5    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) by the Reorganized Debtor. The Debtor and Reorganized Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. Section 1930(a)(6), plus interest due under 31 U.S.C. Section 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a Final Decree, dismissal of the case, or conversion of the case to a case under chapter 7.

12.6    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entities.

12.7    <u>Exculpation</u>.  On the Effective Date, (a) the Debtor, and its direct and indirect parents, subsidiaries and affiliates, together with each of its present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such) and (b) RBC, MTAL, MJM and the Plan Funders and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such) shall be deemed to release each of the other, and shall be deemed released by all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission occurring through the date immediately preceding the Effective Date that arise from or are related to the Third Avenue Property and the ownership thereof, including, without limitation, any act or omission occurring during or relating to the Chapter 11 Case, commencement of the Chapter 11 Case, the solicitation of acceptances of this Plan, the Exit Facility Commitment Letter, the Plan Funding Equity Commitments, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.  Notwithstanding the foregoing but without in any way effecting the releases in favor of RBC and its direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general parties, limited

partners, officers, directors, employees, agents, representatives, attorneys, advisors or consultants which shall remain in full force and effect (hereinafter "RBC Exclusion"), nothing contained herein or elsewhere in this Plan shall affect (or constitute a waiver of) the rights that (i) members, and persons and entities having direct or indirect ownership or other beneficial interests in any of them, of MTAL may have pursuant to the LLC Agreement and/or any of the other numerous agreements and other instruments entered into by any of them governing, relating to or otherwise in connection with their respective interests in MTAL, (ii) members of MTAL (and other signatories thereof) may have pursuant to the Members Agreement; (iii) Sponsor Member or the members of Sponsor Member may have under numerous agreements with Plan Funders (and/or their related entities and affiliates) with respect to the Third Avenue Property and the ownership thereof, including the IRSA Agreements and Tao-Menofim Agreements (collectively "Transfer Agreements"); or (iv) IRSA International LLC or Marciano Investment Group LLC may have against Metropolitan Real Estate Investors LLC or Haim Revah under Article VIII of the IRSA Agreements.

12.8    Discharge.  Except as otherwise provided for in the Plan or in the Confirmation Order, in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, Liens on, and Interests in the Debtor, its assets and Property, which debts, Claims, Liens and Interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtor shall be effective as to each Claim and Interest, regardless of whether a proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan. On the Effective Date, as to each and every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting such Claim or Interest against the Debtor or Reorganized Debtor or their assets or properties.

12.9    Confirmation Injunction. On and after the Confirmation Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court, to enforce rights, obligations and or remedies that may arise or otherwise be available pursuant to or in connection with the agreements referred to in clauses (i) through (iv) of the last sentence of paragraph 12.7 above (but subject to the RBC Exclusion), and to enforce the parties' rights under the Transfer Agreements, all Persons or Entities who have held, hold or may hold any Claim against or Interest in the Debtor (which arise from or are related to the Third Avenue Property and the ownership thereof) is, with respect to any such Claim against or Interest in the Debtor (which arise from or are related to the Third Avenue Property and the ownership thereof), permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Debtor or Reorganized Debtor or any of its properties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or Entities and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants, or any property of any of the foregoing (collectively, the "Protected Parties"); (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, against any of the Protected Parties of any judgment, award, decree or order; (c)

creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Protected Parties; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any of the Protected Parties (except to the extent expressly asserted in a timely filed proof of claim); and (e) taking any actions in any place and in any manner whatsoever, in each case that do not conform to or comply with the provisions of the Plan. Notwithstanding the foregoing, nothing contained herein or elsewhere in this Plan or the Plan Supplement shall alter, affect or constitute a waiver of or otherwise impair the indemnification rights of IRSA International LLC or Marciano Investment Group LLC against Metropolitan Real Estate Investors LLC or Haim Revah under Article VIII of the IRSA Agreements.

12.10 <u>Comprehensive Settlement of Claims and Controversies</u>. Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or causes of action of (a) the Debtor, its Estate, including, without limitation, any Person or Entity seeking to exercise a right in a derivative capacity on behalf of the Estate and (b) the Released Parties, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, the Estate, its property and Claim and Interest holders and is fair, equitable and reasonable. Notwithstanding the foregoing, nothing contained herein or elsewhere in this Plan or in the Plan Supplement shall alter, affect or constitute a waiver of or otherwise impair the indemnification rights of IRSA International LLC or Marciano Investment Group LLC against Metropolitan Real Estate Investors LLC or Haim Revah under Article VIII of the IRSA Agreements.

12.11 <u>Preservation of Insurance</u>. This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor (including, without limitation, their members, managers or officers) or any other person or entity. Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or the carriers.

12.12 <u>Cramdown</u>. To the extent any Impaired Class of Interest entitled to vote on the Plan votes to reject the Plan, the Debtor reserves the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es).

12.13 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

12.14 <u>Notices</u>. Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as

follows:

If to the Debtor:

with a copy to:                    Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
Attention:  Marc Richards, Esquire

If to Reorganized Debtor:

with a copy to:                    Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
Attention:  Marc Richards, Esquire

If to Plan Funders:

with a copy to:                    Simpson Thatcher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017
Attention: Kathrine A. McLendon, Esquire

O'Melveny & Myers LLP
400 S. Hope Street
Los Angeles, CA  90071
Attention: Evan Jones, Esquire

If to RBC:                         Royal Bank of Canada
100 Crescent Court
Suite 1170
Dallas, TX 75201

with a copy to:                    Fried, Frank, Harris, Shriver & Jacobson LLP
                                   One New York Plaza
                                   New York NY 10004-1980
                                   Attention:  Gary L. Kaplan, Esquire
                                   Janice McAvoy, Esquire

12.15   Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.16   Exemption From Transfer Taxes.  Pursuant to Bankruptcy Code section 1146(a): (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer or other consideration under, in the furtherance of, or in connection with this Plan, including, without limitation, the delivery of the MJM Payment to MJM for distribution onto MTAL, the distribution by MTAL of the MJM Payment to the members of MTAL pursuant to the LLC Agreement and any other payments by Plan Funders to MTAL or the members of MTAL, on account of the extinguishment of the MJM Interest, the issuance of the membership interest in the Reorganized Debtor to Plan Funders, the treatment of the RBC Claim, the payments made under the IRSA Agreements and the Tao-Menofim Agreements, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, stock purchase agreements, stockholders agreements or stockholders rights agreements; deeds, bills of sale, or transfers of tangible property will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law

12.17   Severability.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtor's option with the consent of RBC, GS and the Plan Funders remain in full force and effect and not be deemed affected. However, the Debtor, Plan Funders and RBC each reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.18   Headings.  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

# CONFIRMATION REQUEST

The Debtor hereby requests confirmation of the Plan pursuant sections 1129(a) and (b) of the Bankruptcy Code.

DATED: November 12, 2010

**DEBTOR:**

**Metropolitan 885 Third Avenue Leasehold, LLC a Delaware limited liability company**

By: Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz LLC, its sole member

By: Metropolitan 885 Third Avenue Leasehold Holdings LLC, a Delaware limited liability company, its sole member

By: Metropolitan 885 Third Avenue LLC, a Delaware limited liability company, its managing member

By: Metropolitan Real Estate Investors, LLC, a California limited liability company, its managing member

By: */s/ Jacob Abikzer*
Name: Jacob Abikzer
Title: Member