BLANK ROME LLP
Proposed Attorneys for Debtor
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Marc E. Richards
Joel C. Shapiro
Scott F. Budzenski

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
|  | x |  |
| In re: | : |  |
|  | : |  |
| METROPOLITAN 885 THIRD AVENUE | : | Case No. 10-16103 (SCC) |
| LEASEHOLD, LLC, | : |  |
|  | : | Chapter 11 Case |
| Debtor. | : |  |
|  | x |  |

---

**FINAL ORDER (I) AUTHORIZING**
**METROPOLITAN 885 THIRD AVENUE LEASEHOLD, LLC TO USE CASH**
**COLLATERAL AND (II) AUTHORIZING ADEQUATE PROTECTION**

Upon the motion (the "Motion") of Debtor, (all terms used in this Final Order, which are initially capitalized but not otherwise defined shall have the meaning set forth in the Motion) for an order: (a) authorizing Debtor's use of Cash Collateral to maintain ongoing operations and avoid immediate and irreparable harm to the Debtor's estate pending a final hearing, (b) authorizing the Debtor to provide adequate protection to Royal Bank of Canada ("RBC"), and (c) preliminarily scheduling a final hearing on the Motion to consider entry of a final Order ("Final Order") granting the relief requested in the Motion, the Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§157 and 1334(b), (ii) this is a core proceeding pursuant to 28 U.S.C. §157(b)(2), (iii) the relief requested in the Motion is in the best interests of the Debtor, its estate, and their stakeholders, (iv) proper and adequate notice of the Motion and the final hearing thereon has been given and that no other or further notice is

necessary, (v) Debtor requires access to Cash Collateral to avoid immediate and irreparable harm to the Debtor's estate pending, (vi) Debtor is authorized to provide adequate protection to RBC as set forth herein, and (vii) good and sufficient cause exists for the granting of the relief requested in the Motion on a final basis after having given due deliberation on the Motion and in light of all of the proceedings before the Court in connection with the Motion.

Therefore, the Court hereby makes the following additional findings of fact and conclusions of law:

A.  Petition Date.  On November 16, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York and thereby commenced its chapter 11 case (the "Chapter 11 Case").

B.  Debtor in Possession.  The Debtor is continuing in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.

C.  Statutory Committee. As of the date hereof, the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (a "Creditors' Committee") in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

D.  Debtor's Stipulations.  The Debtor admits, stipulates and agrees that (collectively, paragraphs D(a) through D(g) below are referred to herein as the "Debtor's Stipulations"):

a.  Third Avenue Property.  The Debtor owns the leasehold interests on a 34 story Class A office building located on the eastside of Third Avenue between 53rd and 54th Streets in New York City ("Third Avenue Property").

2

b.   RBC Loan.   Pursuant to that certain loan agreement, dated as of July 9, 2007, RBC, as collateral agent for the benefit of the holder or holders of the notes and their respective successors and assigns made a loan to Debtor in the original aggregate principal amount of $210,000,000 (with accrued interest, costs, expenses, fees and penalties, the "RBC Loan").   The RBC Loan is evidenced by a certain Amended, Restated and Consolidated Promissory Note (Note A) in the original principal amount of $125,000,000 ("Note A"*)* and that certain Amended, Restated and Consolidated Promissory Note in the original principal amount of $85,000,000 ("Note B"; and together with Note A, collectively, the "Original Notes"), in each case dated as of July 9, 2007 (the "Original Closing Date").

c.   Security Agreement.   The Original Notes are in turn secured, *inter alia*, by that certain Amended, Restated and Consolidated Leasehold Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents, dated as of the Original Closing Date (the "Original Mortgage") and recorded as Document ID: 2007071901142013 on August 7, 2007 and encumbering the Third Avenue Property.

d.   Additional Loan Documents.   The Debtor also entered into the following documents on the Original Closing Date in connection with the RBC Loan: (i) an Assignment of Leases and Rents; (ii) an Environmental Indemnity Agreement; (iii) a Subordination of Asset Management Agreement and Management Fees – (Asset Management Company signed as Manager of the Third Avenue Property); (iv) a Limited Guaranty; (v) a Subordination of Management Agreement and Management Fees; (vi) a Deposit Account Control Agreement (Security Deposits) (Three Party Hard Lockbox) by and among Borrower, Lender and PNC Bank, National Association ("PNC"); (vii) a Deposit Account Control Agreement (Three Party Hard Lockbox) by and among Debtor, RBC and PNC; (viii) a Deposit

Account Control Agreement by and among Debtor, RBC and Bank of America, N.A. ("BofA"); and (ix) a state level UCC and a county level UCC fixture filing (collectively, with the RBC Loan, the Original Notes and the Original Mortgage, the "Loan Documents", with the collateral granted under the Loan Documents the "Prepetition Collateral").

e.     Validity and Perfection of Original Mortgage and RBC Loan.  The Debtor acknowledges and agrees that: (i) as of the Petition Date, the Original Mortgage on the Prepetition Collateral was valid, binding, enforceable, non-avoidable and properly perfected; (ii) the RBC Loan constitutes a legal, valid, binding, and non-avoidable obligation of the Debtor; (iii) no portion of the RBC Loan, the Original Mortgage or the other Loan Documents are subject to avoidance, recharacterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtor and its estate have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against RBC or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or related to the RBC Loan.

f.     Cash Collateral.  The Debtor represents that all of the Debtor's cash generated from the Prepetition Collateral, wherever located, whether as original collateral or profits or proceeds of the Third Avenue Property or other Prepetition Collateral, constitutes Cash Collateral.

g.     Default by the Debtor.  The Debtor acknowledges and stipulates that the Debtor is in default of its debts and obligations under the Loan Documents.

E.     Adequate Protection.  RBC is entitled to receive adequate protection in respect of the Debtor's use of the Prepetition Collateral and any decline in the value thereof, resulting (a)

134588.01600/6974779v.1

from the use of the Cash Collateral, (b) from the use, sale, lease, or depreciation or other diminution in value of the Prepetition Collateral, or (c) as a result of the imposition of the automatic stay under Section 362(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "Adequate Protection Obligations"). Pursuant to sections 361, 363, and 507(b), as adequate protection for the Adequate Protection Obligations, the Debtor has agreed to provide RBC with: (a) the Adequate Protection Liens; (b) the Adequate Protection Superpriority Claims; and (c) the Adequate Protection Payments (each as defined below). RBC has objected to the use by the Debtor of the Cash Collateral, except on the terms and conditions set forth in this Final Order.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein:

2.      Authorization to Use Cash Collateral. Subject to the terms of this Final Order, Debtor is authorized to use Cash Collateral from a period beginning November 16, 2010 and ending on the earlier of (i) March 31, 2011; or (ii) a Termination Declaration Date (as defined below) (the "Subject Period") strictly pursuant to and in accordance with the Budget attached hereto as Exhibit A (the "Budget") to satisfy (in the order of) (i) all payments required under its ground leases; (ii) all monthly payments to be made in escrow for insurance and taxes; (iii) operational costs and expenses arising in connection with the administration of the Debtor's estate; and (iv) payment of accrued and unpaid Debt Service (as defined in the RBC Loan), including non-default contract rate of interest on the pre-petition loans, from any amounts remaining after payment of items (i) – (iii). Debtor may move amounts between line items on the Budget consistent with reasonable financial practice, may exceed any line items on the Budget by no more than 5% without RBC's permission and notice to U.S. Trustee and may apply unused amounts for any line item on the Budget towards the payment of any other lien item on

5

the Budget. Upon the date of the expiration of the Subject Period (the "Expiration Date"),

Debtor's authority to use Cash Collateral shall cease absent further Order of this Court.

3.       Budget Maintenance.   The Budget and any modifications to, or extensions,

amendments or updates of, the Budget shall be in form and substance acceptable to and approved

in writing by RBC, in its sole discretion. The Budget may be amended or modified in writing

from time to time only with the written consent of RBC, in its sole discretion. The Debtor shall

deliver to RBC on or before the close of business on Tuesday of each week (and if such day is

not a business day, then the next succeeding business day) a (i) comparison for the prior week of

actual results of all items contained in the Budget to the amounts originally contained in the

Budget and (ii) cumulative comparison for the period from the Petition Date through the end of

the prior week of the actual results of all items contained in the Budget to the amounts originally

contained in the Budget, in each case along with such supporting information and additional

reporting as RBC may request.

4.       Adequate Protection Liens.   As adequate protection against any diminution in

value of RBC's interest in the Prepetition Collateral, RBC is hereby granted (effective and

perfected as of the Petition Date and without the necessity of the execution by the Debtor of

mortgages, security agreements, pledge agreements, financing statements or other agreements) a

valid and perfected replacement security interest in, and lien on (the "Adequate Protection

Liens"), all of the right, title and interest of the Debtor in, to and under all present and after-

acquired property and assets of the Debtor of any nature whatsoever, whether real or personal,

tangible or intangible, wherever located, including, without limitation, all cash and Cash

Collateral of the Debtor (whether maintained with RBC or any other financial institution) and

any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts,

causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery, equipment, patents, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the proceeds, products, offspring, rents and profits thereof, rights under letters of credit, capital stock and other equity or ownership interests held by the Debtor, including equity interests in subsidiaries and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired (collectively, the "Collateral"), provided, however, that the Collateral shall not include the Debtor's claims and causes of action under section 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") but, unless this Final Order provides otherwise, the Collateral shall include the proceeds of the Avoidance Actions.  Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall be (i) first priority perfected liens on all of the Collateral that is not otherwise encumbered by validly perfected, non-avoidable security interests or liens as of the Petition Date, (ii) first priority perfected liens on all of the Collateral as to which RBC had a first priority lien as of the Petition Date, even if such Collateral is subject to a validly perfected lien that is junior to the lien of RBC, and (iii) junior perfected liens on all Collateral that is subject to a validly perfected lien with priority over RBC's liens as of the Petition Date.

5.     Priority of Adequate Protection Liens.  The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, a "Successor

134588.01600/6974779v.1

<u>Case</u>").  Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any Successor Case, or upon the dismissal of the Chapter 11 Case or Successor Case.  The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

6.      <u>Adequate Protection Superpriority Claims</u>.  As further adequate protection against any diminution in value of the interests of RBC in the Prepetition Collateral, RBC is hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expenses claims in the Chapter 11 Case and any Successor Case in the amount of the Adequate Protection Obligations (the "<u>Adequate Protection Superpriority Claim</u>").

7.      <u>Priority of Adequate Protection Superiority Claims</u>.  The Adequate Protection Superpriority Claims shall be junior only to the Carve Out (as defined herein).  Except for the Carve Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

8

8.     <u>Adequate Protection Payments</u>.  As additional adequate protection to RBC, RBC shall receive adequate protection payments (the "<u>Adequate Protection Payments</u>") from the Debtor, in the form of: (i) payment of accrued and unpaid Debt Service (as defined in the RBC Loan), including non-default contract rate of interest on the pre-petition loans, from any amounts remaining after payment in accordance with the Budget and this Final Order of (a) all payments required under the Third Avenue Property ground leases; (b) all monthly payments to be made in escrow for insurance and taxes; (c) other operational costs and expenses arising in connection with the administration of the Debtor's estate that are not otherwise set forth on the Budget; (ii) ongoing payment of RBC's fees, costs and expenses including, but not limited to, payment of reasonable attorneys' fees (including but not limited to the fees and expenses of Fried Frank Harris Shriver & Jacobson LLP ("<u>Fried Frank</u>") (with copies of such Fried Frank invoices sent to the U.S. Trustee 10 days prior to payment; the U.S. Trustee shall have the right to object to the payment of such fees, and such fees may be paid upon the expiration of the 10 day period if no objection is raised by the U.S. Trustee)) fees of third party consultants and reports, title insurance premiums and all other similar costs and expenses; and (iii) continued maintenance and insurance of the Collateral in the amounts and for the risks, and by the entities, required under Loan Documents, provided, however, that amounts to be paid in connection with (i)(c) that are not otherwise set forth on the Budget and (ii) above are to be funded by the Plan Funders on the Effective Date and not otherwise paid from Cash Collateral.  The Debtor is authorized and directed, upon the submission of invoices from RBC or its advisors (including but not limited to Fried Frank), to pay all reasonable fees, costs and charges incurred prepetition or postpetition, in each case, in connection with matters relating to the RBC Loan and the rights and interests of RBC in connection with the Chapter 11 Case.  None of the fees, costs and expenses payable to

RBC's advisors pursuant to this paragraph shall be subject to separate approval by this Court, and RBC's advisors shall not be required to file any interim or final fee application with respect thereto.

9.      <u>Modification of Automatic Stay</u>.   The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtor to perform such acts as RBC may request in its sole discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to pay, and RBC to retain and apply, payments made in accordance with the terms of this Final Order.

10.      <u>Perfection of Adequate Protection Liens</u>.   This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle RBC to the priorities granted herein. Notwithstanding the foregoing, the Debtor is authorized and directed to execute and deliver promptly to RBC all such financing statements, mortgages, notices and other documents as RBC may reasonably request, and RBC may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments.

134588.01600/6974779v.1

11. <u>Disposition of Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any material portion of the Collateral without the prior written consent of RBC.

12. <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by RBC, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

a.  the failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order;

b.  the Debtor's obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of RBC, or (ii) entitled to priority administrative status which is equal or senior to that granted to RBC;

c.  any lien or security interest purported to be created under the Loan Documents shall cease to be, or shall be asserted by Debtor not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the Loan Documents or herein;

d.  the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral having a value in excess of $100,000, or (ii) with respect to any lien on or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material

adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

e.      reversal, vacatur, or modification (other than a modification with the express prior written consent of RBC) of this Final Order;

f.      dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a chapter 7 case, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

g.      any misrepresentation of a material fact made after the Petition Date by the Debtor or its agents to RBC about the financial condition of the Debtor, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

h.      a default by the Debtor in reporting financial information as and when required under this Final Order;

i.      the sale of any material portion of the Debtor's assets outside the ordinary course of business without the prior written consent of RBC, in its sole discretion;

j.      unless otherwise agreed to in writing by RBC, March 31, 2011 if the confirmation order for the chapter 11 plan has not been entered by such date;

k.      the filing of a chapter 11 plan that deviates or is inconsistent in any material respect with that certain Non-Binding Term Sheet dated July 30, 2010 as amended by that certain Amendment to Non-Binding Term Sheet dated August 24, 2010, as further amended by that certain Second Amended Non-Binding Term

Sheet dated September 21, 2010 as amended, and as thereafter further amended (collectively, the "Term Sheet");

l.      the Term Sheet is terminated or breached by any of the Borrower Parties (as defined in the Term Sheet).

m.      the failure to make Adequate Protection Payments or other payments to RBC;

n.      the failure to comply with the Budget for any period, measured weekly as of the close of business on Wednesday of each following work week; or

o.      the filing by the Debtor of any motion seeking, or the granting of any motion providing for, reversal or modification of this Final Order.

13.      Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, RBC may declare a termination, reduction or restriction of the ability of the Debtor to use any Cash Collateral (any such declaration, shall be referred to herein as a "Termination Declaration").  The Termination Declaration shall be given by email or facsimile (or other electronic means) to counsel to the Debtor, counsel to any Creditors' Committee (if one is appointed), counsel to New Lipstick LLC, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").  On the Termination Declaration Date, the Debtor' right to use Cash Collateral shall automatically cease, and the automatic stay shall automatically be terminated without further notice or order, and the Debtor shall no longer have the right to use or seek to use Cash Collateral and RBC shall be permitted to exercise all remedies set forth herein in the Term Sheet and in the Loan Documents, as applicable, and as otherwise available at law

134588.01600/6974779v.1

against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to RBC with respect thereto pursuant to the Loan Documents or this Final Order, as applicable.

14. <u>Carve Out</u>.  Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subordinate to the following (collectively, the "<u>Carve-Out</u>"): (i) fees pursuant to 28 U.S.C. § 1930(a)(6); (ii) fees payable to the clerk of the Bankruptcy Court and any agent thereof; and (iii) pursuant to section 726(b) of the Bankruptcy Code, reasonable fees and expenses of a trustee that are incurred after the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, in an amount not to exceed $50,000.  Payment of any obligations within the Carve-Out shall not and shall not be deemed to reduce the RBC Loan or the Adequate Protection Obligations and shall not and shall not be deemed to subordinate the Adequate Protection Liens or the Adequate Protection Superpriority Claims to any junior prepetition or postpetition lien, interest, or claim in favor of any other party.

15. <u>Limitations on the Cash Collateral and the Carve Out</u>.  The Cash Collateral may only be used in accordance with the Budget and, in any event, the Cash Collateral and the Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against RBC or seeking relief that would impair their rights and remedies under the Loan Documents, the Term Sheet or this Final Order, including, without limitation, (A) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the

Bankruptcy Code, against RBC, (B) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the rights and obligations of RBC or seeking affirmative relief against RBC, or (C) for the payment of any services rendered by the professionals retained by the Debtor or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceedings, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of RBC to recover on the RBC Loan, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Original Mortgage, (iii) for monetary, injunctive or other affirmative relief against RBC or its collateral, or (iv) preventing, hindering or otherwise delaying the exercise by RBC of any rights and/or remedies under this Final Order, the Loan Documents, or applicable law, or the enforcement of realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by RBC upon any of the Collateral; (b) to make any distribution under a plan of reorganization in the Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without prior written consent of RBC, unless otherwise ordered by the Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor without the prior written consent of RBC, (e) to object, contest, or interfere with in any way the enforcement or realization upon any of the Collateral by RBC once an Event of Default has occurred; (f) to sell or otherwise dispose of Collateral without the prior consent of RBC; (g) to the extent such Cash Collateral represents insurance proceeds constituting Collateral, without the prior consent of RBC; (h) to pay indebtedness outside the ordinary course of business without the prior consent of RBC; (i) to

134588.01600/6974779v.1

object to or challenge in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of RBC; or (j) to pay any costs or expenses that are not ordinary course operating expenses of the Debtor unless and to the extent such costs or expenses are provided by the Plan Funders.

16.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

17.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Case at any time shall be charged against RBC or any of its claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

18.     <u>No Liability to Third Parties</u>.  In making its decision to permit the use of Cash Collateral or in taking any other actions related to this Final Order, RBC (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtor, its creditors or its estate.  RBC's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership with the Debtor.

19.     <u>No Marshaling/Application of Proceeds</u>.  RBC shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the

Collateral, as the case may be, and proceeds shall be received and applied in accordance with this Final Order notwithstanding any other agreement or provision to the contrary.

20. <u>Section 552(b)</u>. RBC is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to RBC with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

21. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary and subject to the Exit Facility Plan Support Agreement, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) RBC's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection; (b) any of the rights of RBC under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case or a Successor Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

22. <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to RBC hereunder is insufficient to compensate for any diminution in value of RBC's interests in the Prepetition Collateral during the Chapter 11 Case or any Successor Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement by RBC, that the adequate protection granted herein does in fact adequately protect RBC against any diminution in value of its interest in the Prepetition Collateral (including Cash Collateral).

134588.01600/6974779v.1

23. <u>No Waiver by Failure to Seek Relief</u>. The failure of RBC to seek relief or otherwise exercise its rights and remedies under this Final Order or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise of RBC.

24. <u>Proofs of Claim</u>. RBC will not be required to file a proof of claim in the Chapter 11 Case or a Successor Case for its claims to be allowed, and the Debtor's Stipulations shall be deemed to constitute a timely filed proof of claim. Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation) administrative claims) in the Chapter 11 Case or a Successor Case shall not apply to RBC.

25. <u>Good Faith</u>. RBC has acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith.

26. <u>Binding Effect of Final Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, RBC, the Trustee, all other creditors of any of the Debtor, any committee appointed in the Chapter 11 Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case, any Successor Case, or upon dismissal of the Chapter 11 Case or a Successor Case. In the event of any inconsistency between the provisions of this Final Order and any other order (including any "First Day" Pleadings and Orders relating thereto), the provisions of this Final Order shall govern and control. Any payments to be made under any order (including any "First Day" order) shall be made in accordance with this Final Order and the Budget.

27. <u>No Modification of Final Order</u>. The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Final Order without the prior written consent

134588.01600/6974779v.1

of RBC, and no such consent shall be implied by any other action, inaction or acquiescence of RBC. In the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-availability of any advances, payments or use of cash whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to RBC hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

28. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 Case or a Successor Case. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to RBC pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Case, in any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case, and shall maintain their priority as provided by this Final Order until the RBC Loan has been indefeasibly paid in full in cash.

29. <u>Effect of this Final Order</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

134588.01600/6974779v.1

30.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

31.     <u>Disbursement of Funds</u>.  Notwithstanding the terms of the Lockbox Agreement, PNC Bank, N.A. is authorized to disburse funds in accordance with the provisions of this Final Order.


Dated:  New York, New York
        December 8, 2010

                                        /s/Shelley C. Chapman
                                        HONORABLE SHELLEY C. CHAPMAN
                                        UNITED STATES BANKRUPTCY JUDGE

134588.01600/6974779v.1

# EXHIBIT A TO FINAL ORDER

Budget