BLANK ROME LLP
Attorneys for Debtor
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| METROPOLITAN 885 THIRD AVENUE | : | Case No. 10-16103 (SCC) |
| LEASEHOLD, LLC, | : | |
| | : | Chapter 11 Case |
| Debtor. | : | |

---------------------------------------------------- x

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF AN ORDER: (I) APPROVING (A) THE ADEQUACY OF THE SOLICITATION AND DISCLOSURE STATEMENT, AND (B) THE PREPETITION SOLICITATION AND VOTING PROCEDURES AND VOTE TABULATION; (II) CONFIRMING THE DEBTOR'S PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION; AND (III) AUTHORIZING THE <u>ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS</u>**

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Marc E. Richards
Scott F. Budzenski

BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
Joel C. Shapiro

Attorneys for Debtor

Dated: December 17, 2010

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTS ..........................................................................................................................3

ARGUMENT .................................................................................................................3

I.     THE DEBTOR WILL SATISFY ITS BURDEN OF PROOF UNDER SECTION 1129 OF THE BANKRUPTCY CODE .....................................................................3

II.    THE PLAN SATISFIES THE REQUIREMENTS UNDER SECTION 1129(a) OF THE BANKRUPTCY CODE ..............................................................................5

    A.    Section 1129(a)(1): The Plan Complies With All Applicable Provisions Of The Bankruptcy Code................................................................................5

        1.   Section 1122: Classification Of Claims And Interests .........................5

        2.   Section 1123: Contents Of The Plan and  Treatment of Executory Contracts Under 365 ..............................................................................7

    B.    Section 1129(a)(2): The Debtor Has Complied With The Provisions Of The Bankruptcy Code.................................................................................13

        1.   Compliance With Section 1125 .........................................................14

        2.   Compliance With Section 1126 .........................................................18

    C.    Section 1129(a)(3): The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law................................................................22

    D.    Section 1129(a)(4): The Plan Provides That  Payments Made By The Debtor For Services Or Costs And Expenses Are Subject To Court Approval ........................24

    E.    Section 1129(a)(5): The Debtor Has Disclosed All  Necessary Information Regarding Directors, Officers, And Insiders ..........................................25

    F.    Section 1129(a)(6): The Plan Does Not Contain Rate Changes Subject To The Jurisdiction Of Any Governmental Regulatory Commission ..................27

    G.    Section 1129(a)(7): The Plan Is In The Best Interests Of The Debtor's Creditors And Interest Holders ................................................................27

    H.    Section 1129(a)(8): The Plan Has Been Accepted By Impaired Classes, And, As To Such Classes, The Requirements Of Section 1129(a)(8) Have Been Satisfied .......30

    I.    Section 1129(a)(9): The Plan Provides For Payment In Full Of All Allowed Priority Claims .........................................................................................31

    J.    Section 1129(a)(10): At Least One Class Of Impaired Claims Has Accepted The Plan................................................................................................32

    K.    Section 1129(a)(11): The Plan Is Not Likely To Be Followed By Liquidation Or The Need For Further Financial Reorganization ....................................33

    L.    Section 1129(a)(12): All Statutory Fees Have Been Or Will Be Paid ....................35

M.    Sections 1129(a)(13), (14), (15) And (16) Are Inapplicable.....................................36

N.    Section 1146: The Debtor Is Not Required To Pay A Stamp Tax  Or Any Similar Tax To The Extent The Plan (i) Issues, Transfers, Or Exchanges Any Security Or (ii) Delivers Of An Instrument Of Transfer ...........................................................36

III.    The Release, Exculpation, and Injunction Provisions of the Plan Should Be Approved..38

A.    The Releases Of The Released Parties,  The Exculpation, And The Injunction......38

1.  Releases ...........................................................................................................38

2.  Injunction ........................................................................................................39

B.    Standards For Approving The Releases, Exculpation, And Injunction ..................40

C.    The Releases, The Exculpation, And The Injunction Are Reasonable And Should Be Approved .........................................................................................................47

CONCLUSION...........................................................................................................................51

134588.01600/6975454v.6

BLANK ROME LLP
Proposed Attorneys for Debtor
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Marc E. Richards
Joel C. Shapiro
Scott F. Budzenski

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
In re:                                                   :
                                                         :
METROPOLITAN 885 THIRD AVENUE        :      Case No. 10-16103 (SCC)
LEASEHOLD, LLC,                                  :
                                                         :      Chapter 11 Case
                          Debtor.                   :
------------------------------------------------------- x

DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF AN ORDER: (I) APPROVING
(A) THE ADEQUACY OF THE SOLICITATION AND DISCLOSURE STATEMENT,
AND (B) THE PREPETITION SOLICITATION AND VOTING PROCEDURES AND
VOTE TABULATION; (II) CONFIRMING THE DEBTOR'S PREPACKAGED
CHAPTER 11 PLAN OF REORGANIZATION; AND (III) AUTHORIZING THE
ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS

PRELIMINARY STATEMENT

1.       Metropolitan 885 Third Avenue Leasehold, LLC (the "Debtor") as debtor in

possession in this chapter 11 case (the "Reorganization Case"), submits this Memorandum of

Law in support of confirmation of the Debtor's Prepackaged Chapter 11 Plan of Reorganization

dated as of November 12, 2010 (the "Plan"), pursuant to section 1129 of title 11 of the United

States Code (the "Bankruptcy Code").[1]

2.       The Plan is the culmination of extensive, good-faith negotiations among the

Debtor, Royal Bank of Canada ("RBC"), Goldman, Sachs & Co. ("GS"), New Lipstick LLC

---

[1]      Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the
         Plan or the Disclosure Statement (as defined herein).

("NL"), Metropolitan 885 Third Avenue Leasehold Sub Junior Mezz, LLC ("MJM"), Metropolitan 885 Third Avenue Leasehold Holdings LLC ("MTAL"), and various other parties in interest. As described in greater detail in the Disclosure Statement for the Debtor's Prepackaged Chapter 11 Plan of Reorganization dated as of November 12, 2010 (the "Disclosure Statement"), the Plan contemplates a corporate restructuring of the Debtor's secured debt and capital structure resulting in a waiver in excess of $80 million in debt from RBC. Further, the Plan contemplates payment in full in cash to holders of priority and general unsecured claims.

3.       On November 12, 2010, the Debtor commenced a prepetition solicitation of votes to accept or reject the Plan. As evidenced by the Vote Certification (defined below), the classes of Claims entitled to vote on the Plan, Class 2 and Class 4, have voted to accept the Plan. The table below summarizes the certified results from the Plan solicitation process:

| TOTAL NUMBER OF VALID BALLOTS RECEIVED: 2 | | | | |
|---|---|---|---|---|
| **CLASS** | **ACCEPT THE PLAN** | | **REJECT THE PLAN** | |
| | Dollar Amount Voted/Percentage of Total Dollar Amount | Number of Votes/Percentage of Number of Votes | Dollar Amount Voted/Percentage of Total Dollar Amount | Number of Votes/Percentage of Number of Votes |
| Class 2 RBC Secured Claim | $210,000,000.00<br><br>100% | 1<br><br>100% | 0<br><br>0% | 0<br><br>0% |
| Class 4 MJM Interests | N/A<br><br>100% | 1<br><br>100% | 0<br><br>0% | 0<br><br>0% |

4.       Objections to confirmation of the Plan are due to be filed December 20, 2010.

5.       For ease of presentation, in addition to this Memorandum of Law, which is in further support of confirmation of the Plan, the Debtor will file the following documents in connection with the confirmation of the Plan:

2

- Proposed Form of Confirmation Order (the "Proposed Confirmation Order"); and

- Debtor's Witness and Exhibit List as set forth in the Agenda Notice.

6. As discussed below, and as will be further demonstrated at the Confirmation Hearing, the Plan satisfies all of the confirmation requirements of the Bankruptcy Code, including sections 1122, 1123, 1125, 1126, and 1129. Therefore, the Plan should be confirmed.

## FACTS

7. The relevant facts regarding the Debtor's Reorganization Case and the Plan are set forth in the Disclosure Statement, the Plan Supplement and the Plan and in the testimony adduced at the Confirmation Hearing. These documents, and the testimony adduced at the Confirmation Hearing, are hereby expressly incorporated by reference as if set forth fully and at length herein.

## ARGUMENT

### I.

### THE DEBTOR WILL SATISFY ITS BURDEN OF PROOF UNDER SECTION 1129 OF THE BANKRUPTCY CODE

8. To obtain confirmation of the Plan, the Debtor must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. As set forth by the United States Court of Appeals for the Fifth Circuit in *Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II* (*In re Briscoe Enter., Ltd. 11*):

> The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown.

3

994 F.2d 1160, 1165 (5th Cir. 1993). Courts in this jurisdiction follow this ruling by the Fifth Circuit. *See, e.g., In re Spiegel, Inc.*, No. 03-11540 (BRL), 2005 WL 1278094, at *4 (Bankr. S.D.N.Y. May 25, 2005) ("The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence."); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401, at *136 (Bankr. S.D.N.Y: Oct. 31, 2003) ("A debtor, as the proponent of the Plan, bears the burden of proof under section 1129 of the Bankruptcy Code. A debtor must meet this burden by a preponderance of the evidence."); *see also In re Penn Traffic Co.*, No. 03-22945 (ASH), 2005 Bankr. LEXIS 785, at *10 (Bankr. S.D.N.Y. Mar. 11, 2005) ("The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code . . . by a preponderance of the evidence, which is the applicable evidentiary standard in this Court for confirmation of the Plan."); *In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994) ("Notwithstanding this time-sensitive evidentiary burden, the final burden of proof at both the relief from stay and confirmation hearings remains a preponderance of the evidence."); 5 *Collier on Bankruptcy* ¶ 1129.02[4], at 1129-22 (15th rev. ed. 1993) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied.").

9. Through filings with the Bankruptcy Court and testimonial evidence which will be adduced at the Confirmation Hearing, the Debtor will demonstrate by a preponderance of the evidence that all subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

134588.01600/6975454v.6

## II.

## THE PLAN SATISFIES THE REQUIREMENTS
## UNDER SECTION 1129(a) OF THE BANKRUPTCY CODE

A.      Section 1129(a)(1): The Plan Complies With
        All Applicable Provisions Of The Bankruptcy Code

10.     Pursuant to section 1129(a)(1), a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).[2] As demonstrated below, the Plan complies fully with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code.

1.      Section 1122: Classification Of Claims And Interests

11.     Section 1122, in pertinent part, provides:

> (a)     Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a). Under this section, a plan may provide for multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class.

12.     The Plan provides for the separate classification of Claims and equity interests against the Debtor. Collectively, the Plan designates 4 classes based upon differences in the legal nature and/or priority of such Claims and equity interests. Administrative Claims, Priority Tax Claims and Fee Claims (the "Unclassified Claims") are not classified and are separately treated. The other classes are as follows:

---

[2]     *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), affd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), *affd, Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 governing classification of claims and contents of the plan, respectively. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).

134588.01600/6975454v.6

- **Class 1.** Class 1 consists of the "Other Priority Claims," and provides for the separate classification of Claims that are entitled to priority in payment under the Bankruptcy Code other than Administrative Claims and Priority Tax Claims. These Claims relate primarily to New York Dept. of Taxation that had not been paid as of the Petition Date. The Debtor estimates the allowed amount of these claims will aggregate approximately $10,000 (subject to verification on or before December 22, 2010) on the Effective Date. The holders of Claims in this Class are not impaired and therefore were not entitled to vote and were conclusively deemed to have accepted the Plan.

- **Class 2.** Class 2 consists of the "RBC Claim," and provides for the separate classification of an Allowed Secured Claim in the amount of $210,000,000 plus interest, costs, fees, penalties and expenses in respect of the RBC Loan. On the Effective Date, the Reduced RBC Allowed Secured Claim will be $130,000,000.

- **Class 3.** Class 3 consists of "General Unsecured Claims" other than the Unsecured Deficiency Claim of RBC and provides for each holder of a General Unsecured Claim to receive cash on the Effective Date or as soon as practicable thereafter in the full amount of their Allowed Claim (without interest). The Debtor estimates that on the Effective Date, the allowed amount of General Unsecured Claims will aggregate approximately $4,000 (subject to verification on or before December 22, 2010). The holders of Claims in this Class are not impaired and therefore were not entitled to vote and were conclusively deemed to have accepted the Plan.

- **Class 4.** Class 4 consists of the "MJM Interest" and provides for all Class 4 Interests to be cancelled, null and void and of no force and effect.

13. Each of the Claims or equity interests in each particular class is substantially similar to the other Claims or equity interests in such class. Accordingly, the Debtor's classification of Claims and equity interests does not prejudice the rights of holders of such Claims and equity interests. *See In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990) (plan proponent allowed considerable discretion to classify Claims and interests according to facts and circumstances of case so long as classification scheme does not violate basic priority rights or manipulate voting). The Debtor submits that as plan proponent, it has considerable discretion to

classify claims. The classification of Claims and equity interests in the Plan complies with section 1122 of the Bankruptcy Code.

2.  Section 1123: Contents Of The Plan and
    Treatment of Executory Contracts Under 365

14. Section 1123(a) sets forth seven requirements applicable to the Plan. [3] 11 U.S.C. § 1123(a). As demonstrated herein, the Plan complies fully with each such requirement. Section 1123(b) sets forth the permissive provisions that may be incorporated into a chapter 11 plan. 11 U.S.C. § 1123(b). Each such provision of the Plan is consistent with section 1123(b).

a.  Section 1123(a)(1): Designation
    Of Classes Of Claims And Interests

15. Section 1123(a)(1) requires that the Plan must designate classes of Claims and interests subject to section 1122 of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1). As discussed above, Article II of the Plan designates classes of Claims and classes of equity interests subject to section 1122. Section 1123(a)(1) excludes claims specified in sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code from the classification requirement. Accordingly, the Unclassified Claims set forth in the Plan need not be classified and must only be designated. *See In re Armstrong World Indus., Inc.*, 348 B.R. 136 (D. Del. 2006) (Section 1123(a)(1) does not require a plan to designate classes of administrative expenses and priority tax claims). Accordingly, the Unclassified Claims are designated in Article II of the Plan.

b.  Section 1123(a)(2): Classes That
    Are Not Impaired Under The Plan

16. Section 1123(a)(2) requires the Plan to specify which classes of Claims or interests are unimpaired under the Plan. 11 U.S.C. § 1123(a)(2). Article IV of the Plan specifies

---

[3]    The eighth requirement set forth in section 1123 of the Bankruptcy Code is only applicable to individual debtors and does not apply to the Plan.

that Classes 1 and 3, each of which separately classifies Claims against or interests in the Debtor, are unimpaired under the Plan.

      c.     Section 1123(a)(3): Treatment Of The
                  Classes That Are Impaired Under The Plan

17.     Section 1123(a)(3) requires that the Plan specify how the classes of Claims or interests that are impaired under the Plan will be treated. 11 U.S.C. § 1123(a)(3). Article V of the Plan specifies that Classes 2 and 4 are impaired under the Plan. Article V sets forth the treatment of each class of Claims and equity interests that is impaired under the Plan as required by section 1123(a)(3).

      d.     Section 1123(a)(4): Equal Treatment Within Each Class

18.     Section 1123(a)(4) requires that the Plan provide the same treatment for each Claim or interest against the Debtor within a particular class unless such Claim or interest holder agrees to receive less favorable treatment than other class members. 11 U.S.C. § 1123(a)(4). It is well established that "[e]quality of treatment has two aspects. Absent consent to accept less favorable treatment, all members of the class must receive equal value. In addition, each member of the class must pay the same consideration for its distribution." *In re Quigley Co.,* 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007).

19.     In either case, section 1123(a)(4) focuses solely upon the treatment of claims belonging to creditors within a single class. This provision does not affect claims or defenses belonging to the estate. Accordingly, a plan need not treat every claim within a class as fully liquidated and undisputed before it satisfies the "same treatment" standard. *In re Dow Corning Corp.*, 244 B.R. 634, 667-668 (Bankr. E.D. Mich. 1999); *see also Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810, 814 n.7 (6th Cir. 1990).

134588.01600/6975454v.6

20.     Under the Plan, the treatment of each Claim against or equity interest in the Debtor, in each respective class, is the same as the treatment of each other Claim or equity interest in such class.

e.     Section 1123(a)(5): Adequate Means For Implementation

21.     Section 1123(a)(5) requires that chapter 11 plans provide adequate means for their own implementation. 11 U.S.C. § 1123(a)(5). The Plan, together with the documents and agreements included in the Plan Supplement, provides the means for implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code. Specifically, Article VI and various other provisions of the Plan provide for, among other things: (a) the continued existence of the Reorganized Debtor as a limited liability company; (b) the issuance of 100% of the membership interests of the Reorganized Debtor to NL in consideration of its equity contribution of not less than $17,650,000; (c) the adoption of the Amended and Restated LLC Operating Agreement for Debtor which is attached to the  Plan Supplement II ("Operating Agreement"); (d) the appointment of a new board of directors for Reorganized Debtor; (e) the entry by the Reorganized Debtor into the Exit Facility with RBC; and (i) the authorization of all corporate and limited liability company actions necessary to effectuate the Plan.

f.     Section 1123(a)(6): Amendment
     Of The Reorganized Debtor's Charter

22.     Section 1123(a)(6) prohibits the issuance of nonvoting equity securities and requires amendment of the Debtor's charters to so provide. 11 U.S.C. § 1123(a)(6). The limited liability company documents for Reorganized Debtor as provided in the Plan Supplement conform to section 1123(a)(6)'s prohibition on the issuance of nonvoting equity securities and do not permit Reorganized Debtor to issue nonvoting equity securities to the extent disallowed by

134588.01600/6975454v.6

section 1123(a)(6). Consequently, the applicable postconfirmation organizational documents comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

g.       Section 1123(a)(7): The Plan's Provisions Regarding
Director And Officer Selection Are Consistent With Public Policy

23.     Section 1123(a)(7) provides that chapter 11 plans must set forth provisions for the selection of reorganized entities consistent with the interests of creditors and equity security holders. 11 U.S.C. § 1123(a)(7). The Plan Supplement sets forth provisions regarding the manner of selection of the initial board of directors of Reorganized Debtor that are consistent with the interests of creditors, equity security holders, the Plan Support Agreements, the Exit Facility and public policy in accordance with section 1123(a)(7). The Plan Supplement identifies the list of initial board members as well as the proposed officers of the Reorganized Debtor.

h.       Section 1123(b)(1): The Plan Impairs
Certain Classes And Leaves Others Unimpaired

24.     Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Articles IV and V of the Plan list Classes 1 and 3 as unimpaired and Classes 2 and 4 as impaired.

i.       Section 1123(b)(2): Treatment Of
Executory Contracts And Unexpired Leases

25.     Section 1123(b)(2) allows a plan to provide for assumption, rejection or assignment of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code. 11 U.S.C. § 1123(b)(2). Section 365(a) of the Bankruptcy Code states, in relevant part, "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The court uses a business judgment standard to determine whether to approve assumption or rejection of a contract or lease. *See In re Klein*

*Sleep Prods.*, 78 F.3d 18 (2d Cir 1996); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business judgment of the debtor's management"). Article IX of the Plan provides for the assumption of all executory contracts and unexpired leases that exist between the Debtor and any other person or entity prior to the Petition Date except for contracts and leases that were not otherwise previously rejected or the subject of a motion to reject pending on the Confirmation Date. The Debtor's assumption of executory contracts and unexpired leases, including the Ground Lease (collectively the "Core Contracts"), is set forth in the Plan.

26.     Section 365(b) of the Bankruptcy Code sets forth the following requirements that a debtor in possession must satisfy before it may assume an executory contract or unexpired lease:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1); *see also In re ANC Rental Corp., Inc.*, 277 B.R. 226 (Bankr. D. Del. 2002) ("Having met the threshold requirement of a sound business purpose, the Debtors must also cure any existing defaults and provide adequate assurance of future performance of the assigned contracts").

27.     Section 365 of the Bankruptcy Code authorizes the proposed assumption of the Core Contracts, provided that any defaults under the Core Contracts are cured and adequate

assurance of future performance is given. *See generally In re Health Science Prods., Inc.*, 191 B.R. 895 (Bankr. N.D. Ala. 1995) (ability to make current payments on contract combined with projected future financial stability constituted "adequate assurance"); *In re Mako, Inc.*, 102 B.R. 818 (Bankr. E.D. Okla. 1988) (willingness and ability to cure defaults and projected cash flow sufficient to meet obligations under the contract met the "adequate assurance" requirement); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 310 (Bankr. E.D.N.Y. 1981) (finding adequate assurance through the debtor's renewed viability that showed sufficient income to cover the lease to be assumed); *In re Shelco, Inc.*, 107 B.R. 483, 487 (Bank. D. Del. 1989) (finding that "a realistic possibility of an effective reorganization" provides adequate assurance).

28. The Debtor, in its business judgment, has determined that the Core Contracts are important and essential to the future operation of the Reorganized Debtor's business after confirmation of the Plan. The Debtor or the Reorganized Debtor, as the case may be, has cured and/or will cure all monetary defaults under all the Core Contracts with funds provided by the Plan Funders upon further agreement of the parties or further order of this Court. The Debtor is not aware of any material monetary defaults under any of the Core Contracts. The cash flow projections evidence the fact that the Reorganized Debtor can and has provided adequate assurance of future performance. Therefore, the requirements of Section 365 of the Bankruptcy Code are satisfied and the Plan consequently complies with Section 1123(b)(2) of the Bankruptcy Code.

        j.     Section 1123(b)(3): Settlement Or
                      Retention Of Claims Or Interests

29. Section 1123(b)(3) provides that a plan may provide for settlement or retention of any Claim or interest belonging to the debtor. 11 U.S.C. § 1123(b)(3). Article XI of the Plan specifies that the Bankruptcy Court shall retain jurisdiction to, among other things, resolve

claims, issue injunctions, determine applications for allowance of compensation and to determine such other matters as set forth in the Plan and the Bankruptcy Code.

30.     These provisions of the Plan comply with section 1123(b)(3) of the Bankruptcy Code.

k.     Section 1123(b)(6): Other Appropriate Provisions

31.     Section 1123(b)(6) is a catchall provision which permits inclusion of any appropriate provision as long as it is consistent with applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1123(b)(6).  Article XI of the Plan provides that, among other things, the Court shall retain jurisdiction as to all matters involving the Plan and the Claims allowance and distribution process.  These provisions are appropriate because the Court would have otherwise had jurisdiction over all of these matters during the pendency of the Debtor's chapter 11 case. Moreover, case law establishes that a bankruptcy court may retain jurisdiction over the debtor or the property of the estate following confirmation.  *See Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.*), 419 F.3d 83, 96 (2d Cir. 2005) ("a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.") (quoting *In re Petrie Retail*, 304 F.3d 223 (2d Cir. 2002)).  Accordingly, the continuing jurisdiction of the Court is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

32.     Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

B.     Section 1129(a)(2): The Debtor Has Complied
        With The Provisions Of The Bankruptcy Code

33.     Section 1129(a)(2) requires that the plan proponent comply "with the applicable

13

provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2).[4] The Debtor has complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 regarding disclosure and plan solicitation. Sections 1125(g) and 1126(b) of the Bankruptcy Code apply to the solicitation of acceptances and rejections of the Plan prior to the commencement of this chapter 11 case.

1.     <u>Compliance With Section 1125</u>

34.     Section 1125, in pertinent part, provides:

(a) In this section—

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information;

(2) "investor typical of holders of claims or interests of the relevant class" means investor having—

(A) a claim or interest of the relevant class;

(B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and

---

[4]     *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992). The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126; See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

(C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

(c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes. . . .

(e) A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities. . . .

(g) Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with nonbankruptcy law.

35.     11 U.S.C. § 1125.  On November 12, 2010, the Debtor commenced a prepetition solicitation of votes to accept or reject the Debtor's Plan.  Specifically, the Debtor caused Blank Rome LLP (the "Voting Agent") to commence distributing copies of the Solicitation and Disclosure Statement each dated November 12, 2010 (as supplemented, the "Solicitation and Disclosure Statement"), the Plan, and the Ballots (as defined below) (collectively, the

"Solicitation Materials")[5] to each person or entity that was a holder (a "Holder") as of October 31, 2010 (the "Voting Record Date") of (i) the Class 2 RBC Claim and (ii) Class 4 MJM Interest.

36.     The Debtor established November 29, 2010 at 4:00 p.m., prevailing Eastern Time, as the deadline by which Holders of Impaired Voting Claims or Interests entitled to vote to accept or reject the Plan were required to have returned their completed Ballots to the Voting Agent.[6]

37.     On November 16, 2010, the Voting Agent prepared and filed the Declaration of Joel C. Shapiro of Blank Rome LLP Regarding the Methodology for the Tabulation of Ballots Accepting or Rejecting the Prepackaged Chapter 11 Plan of Reorganization of Metropolitan 885 Third Avenue Leasehold, LLC filed with the Court on November 16, 2010 (Docket No. 15) (the "Vote Certification").  Specifically, 100% in amount and 100% in number of holders of Claims and Interests voted to accept the Plan.  The Debtor submits that these acceptances are sufficient to confirm the Plan under section 1125(g) of the Bankruptcy Code.

38.     On the Petition Date, among other pleadings, the Debtor filed the Plan, the Solicitation and Disclosure Statement, the Voting Certification and the Scheduling Motion.

39.     On November 16, 2010, this Court entered its Order (I)  Scheduling a Combined Hearing Under 11 U.S.C. Section 105(d)(2)(b)(vi) to Approve the Adequacy of the Solicitation and Disclosure Statement and the Prepetition Solicitation Procedures and to Confirm the Prepackaged Chapter 11 Plan of Reorganization, (II) Establishing Deadlines and Procedures for

---

[5] The distribution of the Solicitation Materials, in accordance with the Vote Certification (as defined above), is referred to herein as the "Solicitation Procedures".
[6] Copies of the forms of ballots (the "Ballots") are attached to the Motion of the Debtor's Scheduling a Combined Hearing Under 11 U.S.C. Section 105(d)(2)(b)(vi) to Approve the Adequacy of the Solicitation and Disclosure Statement and the Prepetition Solicitation Procedures and to Confirm the Prepackaged Chapter 11 Plan of Reorganization, (II) Establishing Deadlines and Procedures for Filing Objections to the Approval of the Solicitation and Disclosure Statement or the Prepetition Solicitation Procedures or Confirmation of Plan, and (III) Approving the Form and Manner of Notice of the Confirmation Hearing, filed November 16, 2010 (Docket No. 19) (the "Scheduling Motion") as Exhibit A-1 and Exhibit A-2.

Filing Objections to the Approval of the Solicitation and Disclosure Statement or the Prepetition Solicitation Procedures or Confirmation of Plan, and (III) Approving the Form and Manner of Notice of the Confirmation Hearing (the "Scheduling Order") (Docket No. 19).

40.     Pursuant to the Scheduling Order, this Court established (i) 4:00 p.m. prevailing Eastern time on December 20, 2010 as the deadline by which objections to the Solicitation and Disclosure Statement or Plan were to be filed (the "Objection Deadline"), (ii) 5:00 p.m. prevailing Eastern time on December 21, 2010 as the deadline by which replies to any objections to the Plan or Solicitation Disclosure Statement were to be filed (the "Reply Deadline"), and (iii) 10:00 a.m. prevailing Eastern time on December 22, 2010 as the time and date for the hearing to consider approval of the Solicitation and Disclosure Statement and the Solicitation Procedures and confirmation of the Plan (the "Confirmation Hearing").   As of December 17, 2010 no objections have been filed with respect to the Solicitation and Disclosure Statement or Plan.

41.     Pursuant to the Scheduling Order, the Debtor was required to serve a notice, substantially in the form approved as Exhibit C to the Scheduling Motion (the "Notice"), of, among other things, the date set for the Confirmation Hearing and the Objection Deadline on or before November 19, 2010 upon all of the Debtor's known creditors (or nominees therefor), equity interest holders, the U.S. Trustee and all parties requesting notice under Rule 2002 of the Bankruptcy Rules.

42.     The Notice was duly mailed to all known creditors and certain other parties in interest, including counterparties to executory contracts and unexpired leases, in compliance with the directives set forth in the Scheduling Order.[7]

---

[7] The Affidavit of Mailing of Eamon Mason of The Garden City Group Regarding Notice of Summary of Prepackaged Plan of Reorganization and Notice of (I) Commencement of Chapter 11 Cases, (II) Combined Hearing to Approve Adequacy of Solicitation and Disclosure Statement and the Prepetition Solicitation Procedures and

2.    Compliance With Section 1126

43.    Section 1126 specifies the requirements for acceptance of a plan of reorganization.  Under section 1126, only holders of Allowed Claims and Allowed equity interests in impaired classes of Claims or equity interests that will receive or retain property under a plan on account of such Claims or equity interests may vote to accept or reject such plan.  As set forth in section 1126:

> (a) The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .
>
> (b) For the purposes of subsections (c) and (d) of this section, a holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—
>
> > (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or
> >
> > (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title. . . .
>
> (f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.
>
> (g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. § 1126.

---

Confirmation of the Prepackaged Chapter 11 Plan of Reorganization, and (III) Establishment of Objection Deadlines was filed with this Court on November 23, 2010 (Docket No. 32).

134588.01600/6975454v.6

44.     As noted above, the Debtor solicited votes to accept or reject the Debtor's Plan prior to the Petition Date and, as such, section 1126(b), together with section 1125(g), applies to the prepetition solicitation.  The Debtor submits that it has properly relied on the exemption from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder) pursuant to section 4(2) thereof, thereby satisfying section 1126(b)(1), as well as section 1125(g), which require compliance with applicable nonbankruptcy law regarding disclosure with respect to the prepetition solicitation.[8]

45.     In addition, although section 1126(b) is already satisfied based solely on the Debtor's compliance with section 1126(b)(1), the Debtor further submits that the Solicitation and Disclosure Statement contains "adequate information" as such term is defined in section 1125(a) of the Bankruptcy Code, thereby also satisfying section 1126(b)(2) of the Bankruptcy Code.  The Solicitation and Disclosure Statement (as well as copies of all of the Plan Support Agreements) distributed prepetition to Class 2 and Class 4 Holders of Claims and Interests provided extensive information regarding, among other things, the Plan, events preceding the commencement of this chapter 11 case, a liquidation analysis in the Disclosure Statement setting forth the estimated return that creditors would be expected to receive in a chapter 7 liquidation, financial information that would be relevant to creditors' determinations of whether to accept or reject the Plan, and federal income tax consequences of distributions received by creditors pursuant to the Plan.  Although a debtor only need satisfy either section 1126(b)(1) or section 1126(b)(2), the Debtor's prepetition solicitation satisfies both subsections and, as a result, it is clear that the prepetition solicitation complied with section 1126(b).

---

[8] Even if the exemption did not apply, non-bankruptcy law would require the Debtor to "provide all material information that a reasonable investor would need to make an investment decision." *7 Collier on Bankr.* ¶ 1126.03[2][d], at 1126-26 (Alan Resnick and Henry J. Summers eds, 15th ed. rev. 2009) For the reasons set forth above, the Disclosure Statement and Plan Support Agreements contain all material information, and then some.

46. A bankruptcy court has broad discretion in examining the adequacy of the information in a disclosure statement. *See In re A.H. Robbins Comm Inc.*, 880 F.2d 694, 698 (4th Cir. 1989); *see also In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (court has "wide discretion to determine . . . whether a disclosure statement contains adequate information, without burdensome, unnecessary and cumbersome detail"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement is to be determined on case-specific basis under flexible standard).

47. "The primary purpose of a disclosure statement is to provide all material information which creditors . . . affected by the plan need in order to make an intelligent decision whether to vote for or against the plan." *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987), *aff'd*, 80 B.R. 448 (N.D. Ill. 1987), *see also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("[T]he determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *In re Applegate Prop., Ltd.*, 133 B.R. 827, 829-30 (Bankr. W.D. Tex. 1991) ("[A] disclosure statement need not meet the extensive disclosure requirements of the securities laws for registration statements and the like.").

48. As noted above, the text of the Solicitation and Disclosure Statement included extensive information that was more than sufficient for creditors to make an informed decision whether to vote for or against the Plan. Accordingly, the Debtor submits that the Solicitation and Disclosure Statement contained "adequate information" as required under section 1126(b)(2) and 1125(a) of the Bankruptcy Code.

49. As set forth in the Vote Certification, in accordance with section 1126 of the Bankruptcy Code, the Debtor solicited acceptances of the Plan from the holders of all Claims

against the Debtor in each class of impaired Claims. The impaired classes entitled to vote under the Plan are Classes 2 and 4. The Plan reflects that Classes 1 and 3 are unimpaired, and thus, are conclusively presumed to have accepted the Plan and are not entitled to vote pursuant to sections 1126(f) or (g). Based upon the foregoing, the Debtor has satisfied the requirements of section 1129(a)(2) as they relate to the nonvoting classes.

50. As to impaired classes entitled to vote to accept or reject a plan of reorganization, section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance of a plan by classes of Claims:

> (c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

51. As evidenced in the Vote Certification, the Plan has been accepted by creditors holding in excess of two-thirds in amount and one-half in number of the Allowed Claims voted in each of the classes of Claims against the Debtor. In fact, 100% in amount and 100% in number of holders of Claims and Interests voted to accept the Plan.

52. The Debtor submits that votes for acceptance and rejection of the Plan were solicited in good faith and the Solicitation complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Solicitation and Disclosure Statement, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Accordingly, the Debtor, Reorganized Debtor, NL, RBC, MJM and MTAL, and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors

of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code and the Solicitation and Disclosure Statement should be approved.

53.     Based upon the foregoing, the Debtor submits that the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.


C.     Section 1129(a)(3): The Plan Has Been Proposed In
       Good Faith And Not By Any Means Forbidden By Law

54.     Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  The Second Circuit has defined the good-faith standard as requiring a showing that "the plan was proposed with honesty and good intentions." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) (citing *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)) (quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935).  In the context of a chapter 11 plan, courts have held that "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at * 151-152; *see also In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R., 893, 907 (Bankr, S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988), overruled on other grounds, 438 U.S. 1 (1987)); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999).  Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan.  *Id.*

55.    The Debtor has met its good faith obligation under the Bankruptcy Code.  The Debtor has proposed the Plan with the honest purpose of reorganizing and expeditiously distributing value to creditors.  The Plan (including all documents necessary to effectuate the Plan, including, but not limited to, those contained in the Plan Supplement) is the result of extensive arms'-length negotiations among the Debtor, RBC, GS, NL, MJM, MTAL, other key constituents and parties in interest.  All of these parties support confirmation of the Plan.  The Plan provides for a distribution of the value of the Debtor's estate to their creditors in accordance with the priorities and provisions of the Bankruptcy Code.

56.    Moreover, the Plan achieves the primary objectives underlying a chapter 11 bankruptcy - the reorganization of the debtor and the distribution of value to creditors for amounts owing.  *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); *Pereira v. Foong (In re Ngan Gung Rest.*), 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (stressing the importance of payment of creditors in chapter 11 cases).

57.    The Plan accomplishes these goals by providing the means through which Debtor may continue to operate as a viable entity and effectuate prompt distributions to its creditors.  Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code and has garnered the overwhelming support of all of the parties voting on the Plan, the Plan, and all documents necessary to effectuate the Plan, including, but not limited to, the Plan Supplement, have been filed in good faith and the Debtor has satisfied its obligations under section 1129(a)(3).

134588.01600/6975454v.6

D. **Section 1129(a)(4): The Plan Provides That Payments Made By The Debtor For Services Or Costs And Expenses Are Subject To Court Approval**

58. Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Court. 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) requires that all payments of professional fees that are made from estate assets are subject to review and approval as to their reasonableness by the court. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 760; *In re Johns-Manville Corp.*, 68 B.R. at 632; 5 *Collier on Bankruptcy* ¶ 1129.02[4], at 1129-33 (15th ed. rev. 1993).

59. Pursuant to the Interim Compensation Procedures Order entered in this Reorganization Case on December 8, 2010 (Docket No. 50) along with section 331 of the Bankruptcy Code, the Court has authorized and approved the payment of certain fees and expenses of professionals retained in this chapter 11 case. All such fees and expenses, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review by the Court for reasonableness under section 330. In addition, pursuant to sections 503(b)(3) and (4), the Court must review any application for substantial contribution to ensure compliance with the statutory requirements and that the fees requested are reasonable.

60. Section 2.4 of the Plan requires that all entities (with the exception of Professionals employed by RBC) seeking an award of compensation or reimbursement through the Effective Date pursuant to sections 327, 330(a), 503 or 1103 of the Bankruptcy Code for services rendered or reimbursement of expenses incurred through and including the Effective Date must file their final applications for allowance of such compensation or reimbursement no later than 20 days after the Effective Date of the Plan. The claims for compensation of Professionals employed by RBC shall be paid as Allowed Administrative Claims from amounts

24

provided by the Plan Funders without the necessity to file a proof of claim or file any application to or receive any approval from the Bankruptcy Court as set forth in Section 2.3 of the Plan.

61. The foregoing procedures for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtor satisfy the objectives of section 1129(a)(4). *See In re Adelphia Communications Corp.*, 368 B.R. 140 (S.D.N.Y. 2007); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (requirements of section 1129(a)(4) satisfied where plan provided for payment of only "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions -- e.g., §§ 328, 329, 330, 331, and 503(b) — and need not be explicitly provided for in a Chapter 11 plan."); 5 *Collier on Bankruptcy* ¶ 1129.02[4], at 1129-33, 1129-34 (15th ed. rev. 1993). Based upon the foregoing, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

E. Section 1129(a)(5): The Debtor Has Disclosed All
   Necessary Information Regarding Directors, Officers, And Insiders

62. Section 1129(a)(5) requires that the plan proponent: (i) disclose the identity and affiliations of the proposed officers and directors of the Reorganized Debtor; (ii) that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and (iii) that there be disclosure of the identity and the nature of the compensation of any insiders to be retained or employed by the Reorganized Debtor. 11 U.S.C. § 1129(a)(5).

63. The Debtor has satisfied the foregoing requirements. In accordance with Article VI of the Plan, the Debtor filed with the Bankruptcy Court, as part of the Plan Supplement, a list of directors of the Reorganized Debtor (as may be amended, the "List of Directors"). As set forth in the List of Directors, the initial board of directors of the Reorganized Debtor will be

comprised of the members identified in the Plan Supplement, who are selected pursuant to the terms of the Plan and the documents contained in the Plan Supplement. Such disclosure complies with section 1129(a)(5)(A)(i) of the Bankruptcy Code. *See, e.g. In re W.E. Parks Lumber Co.*, 19 B.R. 285, 290-91 (W.D. La. 1982) (The bankruptcy court confirmed a plan in which the identity of three directors on the postconfirmation board would be nominated by a creditor, and the identity of the other four members of the board were revealed at the confirmation hearing).

64.    The employment of the officers is consistent with the interests of creditors and is essential to the ongoing viability of the Debtor's business. The officers of the Reorganized Debtor as set forth in the Plan Supplement are familiar with the Debtor's business and are necessary to maintain critical business relationships with tenants, the lender, suppliers, customers and other parties.

65.    "Section 1129(a)(5)(B) requires a plan to disclose the identity of any 'insider' to be employed or retained by the reorganized debtor and the 'nature of compensation' for such insider." *In re Drexel Burnham Lambert Group*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992). Therefore, the Debtor need not disclose the nature of compensation for those directors and officers who are not insiders of the Debtor under section 1129(a)(5). The new board of directors for the Reorganized Debtor will not be receiving any compensation on account of their directorship, but the independent board members may receive compensation consistent with the compensation that such independent board members received prior to the Petition Date. The officers of the Reorganized Debtor will be receiving salaries or management fees that may be paid to related entities that are consistent with those that were received prior to the Petition Date.

134588.01600/6975454v.6

Consequently, the Debtor has satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

> F. **Section 1129(a)(6): The Plan Does Not Contain Rate Changes Subject To The Jurisdiction Of Any Governmental Regulatory Commission**

66.     Section 1129(a)(6) requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its businesses approve any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). The Plan does not provide for any change in rates subject to governmental regulation. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in this chapter 11 case.

> G. **Section 1129(a)(7): The Plan Is In The Best Interests Of The Debtor's Creditors And Interest Holders**

67.     Section 1129(a)(7) requires that a plan be in the best interests of creditors and stockholders. Specifically, section 1129(a)(7)(A) provides:

> With respect to each impaired class of claims or interests - (A) each holder of a claim or interest of such class -
>
> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A).

68.     The best interests test focuses on individual dissenting parties rather than classes of Claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999). The test requires that each holder of a Claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the Effective Date, not less

than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

69.     Under the best interests test, the court must find that each non-accepting creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated.  *See N. LaSalle St. P'ship*, 526 U.S. at 442; *see also United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 228 (1996).  As section 1129(a)(7) makes clear, this liquidation analysis applies only to non-accepting impaired Claims or equity interests.  If a class of Claims or equity interests unanimously accepts the plan, the best interests test automatically is deemed satisfied for all members of that class.

70.     Under the Plan, Classes 1 and 3 are unimpaired and deemed to accept the Plan. The best interest test, therefore, is inapplicable to such Classes.

71.     Classes 2 and 4 are impaired under the Plan.  The appraisal of the Third Avenue Property conducted by Cushman & Wakefield was made available to the Class 2 and Class 4 Holders of Claims and Interests prior to the Petition Date (as may be supplemented with other evidence proffered or adduced at the Confirmation Hearing) and found that the market value of the Third Avenue Property was less than the current balance of the RBC Secured Claim.  As such, each holder of a Claim or Interest in an Impaired Class either: (i) has accepted the Plan; or (ii) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan that is not less than the amount that it would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

72.     The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the

debtor in the context of chapter 7 of the Bankruptcy Code. A court, in considering whether a plan is in the "best interests" of creditors, is not required to consider any alternative to the plan other than the dividend projected in a liquidation of all of the debtor's assets under chapter 7 of the Bankruptcy Code. *See, e.g., In re Victory Constr. Co.,* 42 B.R. 145, 151 (Bankr. E.D. Cal. 1984); *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990). A chapter 7 liquidation of the Debtor's estate would result in a substantial reduction in the ultimate proceeds available for distribution to all creditors and equity interest holders in this case. For example, the Debtor anticipates that in the context of a chapter 7 liquidation, the Debtor's senior secured creditor would not be paid in full and priority and unsecured creditors would consequently receive no recovery. Under the Plan, however, priority and unsecured creditors are receiving a 100% recovery while the equity interests are receiving a modest recovery. Neither the equity interests nor unsecured and priority creditors would receive any recovery in the case of Chapter 7 liquidation.

73. Moreover, the value of the Debtor's assets in a chapter 7 case would be substantially eroded as a result of the compressed liquidation of such assets that might be required under chapter 7 and the consequent "forced sale" atmosphere. Similarly, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee and substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in these cases. In the context of the erosion of asset value and the increased costs and delay associated with a chapter 7 case, confirmation of the Plan provides each Claim or equity

interest holder with a recovery that is not less than such holder would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

74.     The Plan satisfies the best interests test as to each impaired class because each impaired class will receive a distribution under the Plan that is not less than such class would receive in a chapter 7 liquidation of the Debtor's estate.  Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7).

H.     Section 1129(a)(8): The Plan Has Been Accepted By
Impaired Classes, And, As To Such Classes, The
Requirements Of Section 1129(a)(8) Have Been Satisfied

75.     Section 1129(a)(8) requires that each class of impaired claims or interests accept the plan, as follows: "With respect to each class of claims or interests— (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

76.     As noted, holders of Claims and in Classes 1 and 3 are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have voted to accept the Plan.  Thus, the requirements of section 1128(a)(8) have been satisfied by the Debtor with respect to such claims.

77.     As to the impaired classes entitled to vote to accept or reject a plan, sections 1126(c) and 1126(d) of the Bankruptcy Code specify the requirements for acceptance of the plan by classes of claims and classes of equity interests, respectively.  Holders of the Claims in Class 2 and Interests in Class 4 are the impaired classes eligible to vote on the Plan, each of which voted unanimously to accept the Plan.

78.     The tabulation of votes is discussed in more detail in the Vote Certification.  As to these unimpaired classes and impaired and accepting classes, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

134588.01600/6975454v.6

I.    Section 1129(a)(9): The Plan Provides For
      Payment In Full Of All Allowed Priority Claims

79.    Section 1129(a)(9) requires that entities holding allowed claims entitled to priority under section 507(a)(1) - (8) receive specified treatment under a plan.  Here, the Plan provides the treatment required by section 1129(a)(9) for each of the various Claims specified in section 507(a)(1) - (8).

80.    In accordance with sections 1129(a)(9)(A) and (B), section 3.1 of the Plan provides that Allowed Administrative Claims under section 503(b) (including, without limitation, all administrative claims under Section 503(b)(9) and 1114(e)(2) of the Bankruptcy Code or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(1) or 507(b) of the Bankruptcy Code, but excluding Priority Tax Claims under section 507(a)(8) described below) will be paid in full in Cash on the later of the Effective Date and the date such Claim becomes Allowed (or as soon thereafter as is practicable).

81.    Each holder of an Allowed Fee Claim relating to compensation of a Professional for services rendered or reimbursement of expenses incurred in the Chapter 11 Case on or prior to the Effective Date shall receive 100% of the unpaid amount of such Allowed Fee Claim in Cash after such Fee Claim becomes an Allowed Claim.  Claims for compensation of Professionals employed by RBC shall not be considered Fee Claims and shall be paid as Allowed Administrative Claims as set forth in section 3.1 of the Plan.

82.    In addition, all post-petition ordinary course administrative claims shall be paid in the ordinary course during the chapter 11 case.  Thus, the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

134588.01600/6975454v.6

83.     The Plan also satisfies the requirements of sections 1129(a)(9)(C) and (D) of the Bankruptcy Code with respect to the treatment of Priority Tax Claims under section 507(a)(8), and provides the rate of interest on such tax claims dictated by section 511 of the Bankruptcy Code.  Pursuant to Section 3.2 of the Plan, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either: (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of: (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtor prior to the Effective Date and the Reorganized Debtor following the Effective Date might otherwise agree, or (at the election of the Debtor or the Reorganized Debtor); (b) over a period of five (5) years from the Petition Date in equal monthly installments of principal plus interest at the rate of six percent per annum.

84.     Based upon the foregoing, the Plan satisfies the requirements of sections 1129(a)(9), 507(a)(8), and 511 of the Bankruptcy Code.

J.      Section 1129(a)(10): At Least One Class
        Of Impaired Claims Has Accepted The Plan

85.     Section 1129(a)(10) requires the affirmative acceptance of the Plan by at least one class of impaired claims, ". . .determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10).  As demonstrated below, and as will be further demonstrated at the Confirmation Hearing, the Plan satisfies this requirement.

86.     As discussed above, and as set forth in the Vote Certification, Holders of Claims in Class 2 and Interests in Class 4, each of which is Impaired under the Plan, have voted to accept the Plan in requisite numbers and amounts without the need to include any acceptance of the Plan by any insider.  Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

134588.01600/6975454v.6

K.  Section 1129(a)(11): The Plan Is Not Likely To Be Followed
    <u>By Liquidation Or The Need For Further Financial Reorganization</u>

87.  Section 1129(a)(11) requires that, as a condition precedent to confirmation, the

Court determine that the Plan is feasible, meaning:

> Confirmation of the plan is not likely to be followed by the
> liquidation, or the need for further financial reorganization, of the
> debtor or any successor to the debtor under the plan, unless such
> liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  As described below, and as will be demonstrated at the Confirmation

Hearing, the Plan is feasible within the meaning of this provision.  The feasibility test set forth in

section 1129(a)(11) requires the Court to determine whether the Plan is workable and has a

reasonable likelihood of success.  *See United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549

(1990); *In re Johns-Manville Corp.*, 843 F.2d at 649.

88.  The Second Circuit has stated that "the feasibility standard is whether the plan

offers a reasonable assurance of success.  Success need not be guaranteed." *Id*; *see In re U.S.

Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986)

("'Feasibility' does not, nor can it, require the certainty that a reorganized company will

succeed."); *see also In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *168 (Bankr. S.D.N.Y.

Oct. 31, 2003) ("The feasibility test set forth in section 1129(a)(11) requires the Court to

determine whether the Plan is workable and has a reasonable likelihood of success."); *In re One

Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("It is not

necessary that the success be guaranteed, but only that the plan present a workable scheme of

reorganization and operation from which there may be a reasonable expectation of success.")

(quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11], at 1129-54 (15th ed. 1992)).  The Reorganized

Debtor will be able to generally pay bills as they come due.  *In re Texaco Inc.*, 84 B.R. at 910

("All that is required is that there be reasonable assurance of commercial viability."); *In re*

*Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986) ("Guaranteed success in the stiff winds of commerce without the protection of the [Bankruptcy] Code is not the standard under § 1129(a)(11).").

89.     The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed. The purpose of the feasibility test is to protect against visionary or speculative plans. *In re Kent Terminal*, 166 B.R. at 560. "Just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 762.

90.     Applying the foregoing standards of feasibility, courts have identified the following factors as probative:

> (1)     the adequacy of the capital structure;
>
> (2)     the earning power of the business;
>
> (3)     economic conditions;
>
> (4)     the ability of management;
>
> (5)     the probability of the continuation of the same management; and
>
> (6)     any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*See In re Leslie Fay Cos., Inc.*, 207 B.R. at 789 (citing 7 *Collier on Bankruptcy* ¶ 1129.LH[2], at 1129-82 (15th ed. rev. 1996)); *see also In re Texaco, Inc.*, 84 B.R. at 910; *Prudential Energy*, 58 B.R. at 862-63. The foregoing list is neither exhaustive nor exclusive. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 763. As the Debtor will demonstrate at the Confirmation Hearing, the Plan satisfies these standards of feasibility.

134588.01600/6975454v.6

91.     For purposes of determining whether the Plan satisfies the above-described feasibility standards, the Debtor has analyzed its ability to fulfill its obligations under the Plan. As part of this analysis, the Debtor prepared financial projections for the period January 1, 2011 through December 31, 2017 (the "Projections").]  The Projections are annexed as Exhibit 3 to the Plan Supplement II filed on December 17, 2010.  Based upon the information contained in the Disclosure Statement and the Projections, the Debtor anticipates that its cash on hand upon emergence, along with the cash and availability provided by the Exit Facility, will provide sufficient liquidity to make all required payments under the Plan and to satisfy ongoing working capital requirements.

92.     The Plan has more than a reasonable likelihood of success.  The restructuring of the RBC Loan and other transactions contemplated under the Plan will enable the Reorganized Debtor to continue its current operations and will eliminate a substantial portion of its long-term debt by reducing the RBC Claim by the amount of $80,000,000.

93.     Based upon the foregoing, the Plan is feasible, there is a more than a reasonable likelihood that the Reorganized Debtor will meet its financial obligations under the Plan in the ordinary course of business, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtor.  Therefore the Plan satisfies the feasibility standard of section 1129(a)(l 1) of the Bankruptcy Code.

L.     Section 1129(a)(12): All Statutory Fees Have Been Or Will Be Paid

94.     Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [title 28, the United States Code], as determined by the court at the hearing on confirmation of the plan. . . ." 11 U.S.C. § 1129(a)(12).  Section 507 provides that "any fees and charges assessed against the estate under [section 1930,] chapter 123 of title 28" are afforded priority as administrative expenses. *Id*. at § 507(a)(2).  In accordance with sections 507 and 1129(a)(12) of

the Bankruptcy Code, section 12.5 of the Plan provides that all such fees will be paid on the Effective Date (if due) by the Reorganized Debtor. Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

M.      Sections 1129(a)(13), (14), (15) And (16) Are Inapplicable

95.     Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(l3). The Debtor has no Retiree Benefits (within the meaning of Section 1114 of the Bankruptcy Code) and as such, section 1129(a)(13) of the Bankruptcy Code is not applicable to this case. The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this chapter 11 case. Likewise, section 1129(a)(l5) of the Bankruptcy Code is inapplicable in this chapter 11 case because the Debtor is not an individual. Lastly, the Debtor is not a corporation or trust that is not moneyed, business or commercial corporations or trusts. Therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable to this chapter 11 case.

N.      Section 1146: The Debtor Is Not Required To Pay A Stamp Tax
         Or Any Similar Tax To The Extent The Plan (i) Issues, Transfers, Or
         Exchanges Any Security Or (ii) Delivers Of An Instrument Of Transfer

96.     Section 1146(a) prohibits a stamp tax, or any similar tax, upon the "issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title. . . ." 11 U.S.C. § 1146(a). The Debtor seeks an exemption under section 12.16 of the Plan which prohibits a stamp tax or similar tax on, among other things, the delivery of the MJM Payment to MJM for further distribution to MTAL, the distribution by MTAL of the MJM Payment to the members of MTAL pursuant to the LLC Agreement and any other payments by Plan Funders to MTAL or the members of MTAL, on account of the extinguishment of the MJM Interest, the issuance of the membership interest in

the Reorganized Debtor to Plan Funders, the treatment of the RBC Claim, the payments made under the IRSA Agreements and the Tao-Menofim Agreements, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, stock purchase agreements, stockholders agreements or stockholders rights agreements, deeds, bills of sale, or transfers of tangible property. No stamp taxes or similar taxes will be assessed in connection with these transactions authorized under the Plan.

97. The stamp tax exemption set forth in the Debtor's Plan is entirely consistent with section 1146(a) of the Bankruptcy Code as well as with the seminal case interpreting that section. In *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008) ("Piccadilly"), the Supreme Court considered whether the section 1146(a) exemption was appropriate in a case where a debtor sells its assets prior to confirmation of its plan. In Piccadilly, the Supreme Court held that because section 1146(a) provides the tax exemption for any asset transfer "under a plan confirmed under section 1129," 11 U.S.C.§ 1146(a), and the sale in Piccadilly occurred prior to confirmation of the debtor's plan, the tax exemption was not available. The Supreme Court stated that "[s]ection 1146(a) affords a stamp-tax exemption only to transfers made pursuant to a chapter 11 plan that has been confirmed." Id. At 52-53. Because all of the proposed transfers and payments will occur pursuant to the Plan, once the Plan is confirmed and not before, the stamp-tax exemption set forth in section 12.16 of the Debtor's Plan is entirely consistent with sections 1146(a) and Piccadilly.

134588.01600/6975454v.6

## III.

### THE RELEASE, EXCULPATION, AND INJUNCTION
### PROVISIONS OF THE PLAN SHOULD BE APPROVED

A.    The Releases Of The Released Parties,
      The Exculpation, And The Injunction[9]

1.    Releases

98.    Article VII of the Plan provides for releases by the Debtor (the "Releases")
against the Released Parties which include: (i) RBC, (ii) NL, (iii) MJM, (iv) MTAL and (v) the
officers, directors and employees of the Debtor, and in the case of each of (i) - (iv) each such
entities respective direct and indirect parents, subsidiaries and affiliates, together with each of
their respective shareholders, members, managers, general partners, limited partners, officers,
directors, employees, agents, representatives, attorneys and advisors or consultants.

99.    Section 12.7 includes an Exculpation and provides that

> [O]n the Effective Date, (a) the Debtor, and its direct and indirect
> parents, subsidiaries and affiliates, together with each of its present
> and former shareholders, members, managers, general partners,
> limited partners, officers, directors, employees, agents,
> representatives, attorneys and advisors or consultants (solely in
> their capacities as such); and (b) RBC, MTAL, MJM and the Plan
> Funders and all of their respective direct and indirect parents,
> subsidiaries and affiliates, together with each of their respective
> present and former shareholders, members, managers, general
> partners, limited partners, officers, directors, employees, agents,
> representatives, attorneys and advisors or consultants (solely in
> their capacities as such) shall be deemed to release each of the
> other, and shall be deemed released by all holders of Claims or
> Interests, of and from any claims, obligations, rights, causes of
> action and liabilities for any act or omission occurring through the
> date immediately preceding the Effective Date that arise from or
> are related to the Third Avenue Property and the ownership
> thereof, including, without limitation, any act or omission
> occurring during or relating to the Chapter 11 Case,
> commencement of the Chapter 11 Case, the solicitation of

---

[9]    This section is a summary of these provisions and is qualified in its entirety by the language of the Plan and the Disclosure Statement.

acceptances of this Plan, the Exit Facility Commitment Letter, the Plan Funding Equity Commitments, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence.

Further, section 12.7 provides that, notwithstanding the foregoing but without in any way effecting the releases in favor of RBC and its direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general parties, limited partners, officers, directors, employees, agents, representatives, attorneys, advisors or consultants which shall remain in full force and effect (hereinafter "RBC Exclusion"), nothing contained herein or elsewhere in the Plan shall affect (or constitute a waiver of) the rights that (i) members, and persons and entities having direct or indirect ownership or other beneficial interests in any of them, of MTAL may have pursuant to the LLC Agreement and/or any of the other numerous agreements and other instruments entered into by any of them governing, relating to or otherwise in connection with their respective interests in MTAL, (ii) members of MTAL (and other signatories thereof) may have pursuant to the Members Agreement; (iii) Sponsor Member or the members of Sponsor Member may have under numerous agreements with Plan Funders (and/or their related entities and affiliates) with respect to the Third Avenue Property and the ownership thereof, including the IRSA Agreements and Tao-Menofim Agreements (collectively "Transfer Agreements"); or (iv) IRSA International LLC or Marciano Investment Group LLC may have against Metropolitan Real Estate Investors LLC or Haim Revah under Article VIII of the IRSA Agreements.

2.    Injunction

100.    Section 7.2 of the Plan creates an injunction (the "Injunction")

[O]n the Effective Date against the Debtor and the Reorganized Debtor permanently enjoining them from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind, including asserting any setoff, right of subrogation, contribution, indemnification or recoupment of any kind, directly or indirectly, or proceeding in any manner in any place inconsistent with the releases granted by the Debtor and the Estate to the Released Parties pursuant to the Plan.

101. Further, section 12.9 creates a Confirmation Injunction against certain Protected Parties (as defined in the Plan) including the Debtor and the Reorganized Debtor. Section 12.9 further provides that

> [N]othing contained [in section 12.9] or elsewhere in the Plan or the Plan Supplement shall alter, affect or constitute a waiver of or otherwise impair the indemnification rights of IRSA International LLC or Marciano Investment Group LLC against Metropolitan Real Estate Investors LLC or Haim Revah under Article VIII of the IRSA Agreements.

**B.    Standards For Approving The Releases, Exculpation, And Injunction**

102. Upon confirmation of a plan and pursuant to section 1141(d), a chapter 11 debtor receives a "discharge" of claims against it. For those holders of Claims voting in favor of the Plan, the vote itself is a voluntary release of such holder's Claim because the liens in favor of RBC exceed the value of the Debtor's property and only RBC would receive any distribution under a liquidation of the Debtor's estate and, even in the case of RBC, such distribution would be less than the value of its liens. *See* Disc. Stmt, at Section IX. Consequently, a vote in favor of the Plan allows each impaired claim holder greater recovery than any possible recovery under a liquidation of the Debtor's estate. *See e.g. In re Conseco, Inc.*, Case No. 02 B 49672 (Bankr. N.D. 111. Nov. 17, 2003) ("The voluntary release of non-debtor in exchange for a distribution that would otherwise go to more senior creditors does not conflict with any provision of the Bankruptcy Code."). Section 1141(d)(1), in part, provides:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation. . . .

11 U.S.C. § 1141(d). Section 524(e), governing the effect of discharge under the Bankruptcy Code, indicates that "except as provided in subsection (a)(3) . . . discharge of a debt of the debtor

does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. §524(e). Notwithstanding this express limitation of the discharge to the debtor, a debtor may settle and release its claims against third parties. 11 U.S.C. § 1123(b)(3)(A).

103.    A plan that proposes to release a debtor's claim is considered a "settlement" for purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code. *See e.g., Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 33 (2d Cir. 1995) (the release and injunction provisions of the plan were deemed submitted for approval of the court pursuant to section 1123(b)(3)(A) and Bankruptcy Rule 9019(a)); *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *117 (same); *In re Cellular Info. Sys.*, 171 B.R. 926, 947-948 (Bankr. S.D.N.Y. 1994) (same); *In re WCI Cable, Inc.*, 282 B.R. 457, 469 (Bankr. D. Ore. 2002) ("I find that the release and injunction provisions of . . . the WCI plan are submitted for approval by the court pursuant to § 1123(b)(3)(A) and [Rule 9019(a) of the Federal Rules of Bankruptcy Procedure]").

104.    In reviewing a plan settlement and releases of the debtor's claims pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the court should be guided by the "reasonable business judgment" standard of Rule 9019 of the Federal Rules of Bankruptcy Procedure. *See In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at * 117; *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 758-760. As described below, the Debtor has exercised reasonable business judgment in requesting Plan releases and exculpation of third parties, including the Released Parties.

105.    It is also clear that, subject to the debtor's reasonable business judgment, the releases may include not only claims assertable directly by the debtor, but also claims assertable on behalf of, or derivative of the rights of, the debtor, including shareholder derivative actions, fraudulent conveyance claims, preference actions, and other similar types of actions subject to

settlement by the debtor. *See In re PWS Holding Corp.*, 303 F.3d 308, 315 (3d Cir. 2002), cert, denied, 538 U.S. 924 (2003); *In re Texaco, Inc.*, 84 B.R. at 900; *In re Allegheny Int'l, Inc.*, 118 B.R. 282, 311 (Bankr. W.D.Pa. 1990); *Huddleston v. Nelson Bunker Hunt Trust Estate*, 117 B.R. 231, 233-34 (N.D. Tex. 1990) (confirming plan containing release of claims against banks to the extent they were derivative of the debtor's claims).

106. Where such relief represents an important step in the success of the overall plan of reorganization, a bankruptcy court is also empowered to issue permanent injunctions against or authorize releases of claims by non-debtors against non-debtors under a chapter 11 plan and pursuant to section 105(a) of the Bankruptcy Code. *See In re Johns-Manville Corp.*, 68 B.R. at 618 (permanent injunction in favor of settling insurance company); *see also, In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir. 1988), *cert. denied*, 493 U.S. 939 (1989) (release and permanent injunction in favor of insurance company, executives and law firms); *Greer II v. Gaston & Snow (In re Gaston & Snow)*, Case No. 93 Civ. 8517, 8628, 1996 WL 694421 (S.D.N.Y. Dec. 4, 1996) (injunction precluding creditors who voted against the plan from asserting claims against third party non-debtors who contributed substantial sums to the plan of reorganization); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 184 B.R. 648 (S.D.N.Y. 1995) (release of claims against individual signatories approved); *In re Texaco, Inc.*, 84 B.R. at 904 (release by debtors of potential claims against officers and directors).

107. Although the Second Circuit has viewed third party non-debtor releases more skeptically as of late, bankruptcy courts have nonetheless approved non-debtor releases and injunctions in situations where the releases and injunctions are an integral part of the plan of reorganization, confer material benefits on the debtor's estate and its creditors, or are necessary to effectuate the plan of reorganization. *See Deutsche Bank AG, London Branch v. Metromedia*

Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.) ("Metromedia"), 416 F.3d 136, 141 (2d Cir. 2005) (quoting *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992)) (Release of non-debtor parties in a chapter 11 plan is allowed in situations where the release plays "'an important part in the debtor's reorganization plan.'"); *In re Dreier LLP*, 429 B.R. 112 (Bankr. S.D.N.Y 2010); *see also, Travelers Casualty and Surety Co. v. Chubb Indemnity Insurance Co. (In re Johns-Manville Corp.)* 600 F.3d 135 (2d Cir. 2010 (*per curiam*) ("Manville II")) *cert. denied,* 2010 WL 328636 (November 29, 2010) (adhereing to the position in the earlier opinion by the same panel in *Johns Manville Corp.,* 517 F.3d 52 (2d Cir. 2008) *rev'd on other grounds,* 129 S.Ct. 2195 (2009) (Manville I); *Drexel,* 960 F.2d at 293 (bankruptcy court has jurisdiction and power to approve release and injunction in a plan, including the release of identified non-debtor third parties, where such releases play an important part in the plan of reorganization); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988), *cert. denied*, 488 U.S. 868 (1988) (finding that section 105(a) "has been construed liberally to enjoin suits that might impede the reorganization process," and thus upholding permanent injunction issued in favor of settling insurance company, and approving release of third parties over the objection of creditors); *Shugrue*, 184 B.R. at 655 ("[C]ourts may issue injunctions enjoining creditors from suing third parties . . . in order to resolve finally all claims in connection with the estate and to give finality to a reorganization plan.").

108.    The Second Circuit's recent opinion in Manville II states that "[A] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the res of the bankruptcy estate."  600 F.3d at 146 (quoting Manville I, 517 F.3d at 66)  In Manville I, plaintiffs sought recover directly from the debtor's insurer for the insurer's independent

wrongdoing and raised no claim against the debtor's insurance coverage. Id. at 65. The court ruled that since the plaintiffs made no claim against an asset of the bankruptcy estate, and their action did not affect the estate, the bankruptcy court lacked jurisdiction to enjoin claims against the debtor's insurer. Id.

109. Recently, Judge Bernstein dealt with the issue of third party non-debtor releases in Dreier stating:

> In assessing a court's jurisdiction to enjoin a third party dispute, the question is not whether the court has jurisdiction over the settlement, but whether it has jurisdiction over the attempts to enjoin creditors' unasserted claims against the third party. 'Related to' jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate.

In re Dreier LLP, 429 B.R. 112, 131 (S.D.N.Y. 2010). See also, Shearson Lehman Bros, Inc. v. Munford, Inc. (In re Munford, Inc.) 97 F.3d 449, 454 (11th Cir. 1996) ("It is not the language of the settlement agreement that confers subject matter jurisdiction in this case. Rather, it is the 'nexus' of those claims to the settlement agreement… that the bankruptcy court must approve"). Dreier, 429 B.R. at 131, citing Manville II, 517 F.3d at 65, Zale Corp., 62 F.3d 746, 753 (5th 1995). "Related to jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate. Id.

110. Mr. Jacob Abikzer will testify that without the Release, Injunction and Exculpation provisions, the various parties would not have been able to reach an agreement on the Plan and the Debtor would not be able to realize the significant and crucial benefits it is to receive thereunder. Pursuant to the Plan Support Agreements, RBC has agreed to waive $80 million of its claims, Goldman Sachs will take a multi-million loss on its investment and the other parties to the Plan Support Agreements have likewise agreed to make substantial contributions and/or accommodations. In recognition of the generous and significant nature of

such consideration, the parties viewed the Exculpation, Release, and Injunction provisions to be a nonnegotiable necessity or cornerstone to the Plan. The terms of these provisions were heavily negotiated in good faith and at arms' length and were narrowly tailored with exclusions to ensure that all of the obligations the parties agreed to would be met and the Plan would be effectuated. Additionally, because unsecured creditors are being paid 100% in cash pursuant to the Plan, the Exculpation, Release, and Injunction provisions do not affect anyone other than the parties who were heavily involved in the negotiation of those very provisions. Finally, the Debtor is not aware of any potential causes of action against any of the Released Parties. Mr. Abikzer would testify that the intense negotiations over a almost four month period would not have resulted in the fully consensual Plan without the Exculpation, Release, and Injunction provisions. The carefully crafted Plan and Plan Support Agreements and the agreement amongst the parties they embody would be irreconcilably impaired without these provisions.

111. The Second Circuit's decision in Metromedia makes clear that non-debtor releases should not be approved absent the finding that truly "unusual circumstances" render the release terms important to the success of the plan. See 416 F.3d at 143. The bankruptcy judge must make a factual finding of the importance of the release after presentation of evidence supporting such a finding. Id. In making the determination, courts consider, inter alia, whether the estate received substantial consideration in return for the release. In re Karta Corp., 342 B.R.42, 54 (S.D.N.Y. 2006) (citing Drexel Burnham Lambert Group Inc., 960 F.2d at 293). There can be no question that the Debtor herein received substantial consideration to warrant the granting of non-debtor third party releases.

134588.01600/6975454v.6

112.     While there is no rigid test for determining whether third-party releases and injunctions are integral to a plan of reorganization and, therefore, should be approved, courts generally tend to "balance the equities" considering factors such as whether:

1. there is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

2. the non-debtor has contributed substantial assets to the reorganization;

3. the injunction is essential to reorganization, and without it, there is little likelihood of success;

4. a substantial majority of the creditors agree to such injunction, specifically, if the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment; and

5. the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); *Metromedia,* 416 F.3d at 141; *see also In re Continental Airlines*, 203 F.3d 203, 212 (3d Cir. 2000) (stating that the *Drexel* and *Manville* plans provided consideration to parties who would be enjoined from suing non-debtors); *Kirk v. Texaco, Inc.*, 82 B.R. 678, 685 (S.D.N.Y. 1988) (creditor's acceptance of $3 billion under the plan in satisfaction of a judgment of $10.3 billion, plus interest, represented substantial consideration because "only if an otherwise identical plan without the releases would have received the assent of [the creditor], could an argument be made that there was no consideration").

113.     As set forth in the Plan and the Vote Certification, the impaired classes—Class 2 and 4—have each voted unanimously in favor of the Plan.  Further, each class has made a substantial contribution to the estate to warrant the granting of the third party releases.  The

134588.01600/6975454v.6

Injunction provisions are a cornerstone of the Plan and the unsecured creditors, Class 3, will be paid in full. It is important to note that the Plan was heavily negotiated and attached to the Plan Support Agreements. The Plan Support Agreements make it ineluctably clear that the Debtor cannot modify the Plan (including the Release, Injunction and Exculpation provisions) without the consent of the Released Parties. Eliminating or modifying these provisions could well cause a complete unwinding or meltdown of the entire prepackaged Plan (and might, subject to the Debtor's right to argue otherwise, result in the Class 2 and Class 4 Ballots being subject to withdrawal). It is inappropriate to strike protection heavily negotiated at this date since parties may have given up other considerations for these protections. The very essence of this prepackaged Plan rests on the Injunction, Exculpation and Release foundations and like the Third Avenue Property itself, a further compromise of the foundation may result in a complete collapse of the building [Plan]. If this is not a "unique" case under "unusual circumstances," it would be almost impossible to find one that was. The standard is, it is respectfully submitted, more than satisfied.

       C.      The Releases, The Exculpation, And The
               Injunction Are Reasonable And Should Be Approved

114. Pursuant to the Plan, the Debtor is generally seeking to release and exculpate those parties that were instrumental to the Debtor's restructuring efforts and the formulation of the Plan.

115. Furthermore, the Exculpation is appropriately limited to a qualified immunity for acts of negligence, but does not relieve any party of liability for gross negligence or willful misconduct. *See In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (similar exculpation provision reflecting Bankruptcy Code's limitation of liability did not violate third

party release prohibition of section 524(e)); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992).

116. Exculpation for participating in the plan process is appropriate where plan negotiation could not have occurred without protection from liability. As recognized by the Second Circuit in *Drexel*, where a debtor's plan of reorganization requires the settlement of numerous, complex issues, protection of third parties against legal exposure may be a key component of the settlement. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 293; *In re Enron Corp.*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (excising similar exculpation provision would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition").

117. Moreover, the Releases and Exculpation are fully consistent with the holding in *Metromedia*. In fact, a provision very similar to the Releases was approved and undisturbed on appeal in Metromedia's chapter 11 cases. *See* Second Amended Plan of Reorganization of Metromedia Fiber Network, Inc., et al., Case No. 02-22736 (ASH) (Bankr. S.D.N.Y. July 1, 2003) (Docket No. 1690); Order Confirming Second Amended Plan of Reorganization of Metromedia Fiber Network, Inc., *et al*, Case No. 02-22376 (ASH) (Bankr. S.D.N.Y. Aug. 21, 2003) (Docket No. 1988). *See also Metromedia*, 416 F.3d at 141 (non-debtor release is appropriate where the release is important to the success of the plan). Another similar provision was subsequently approved in the chapter 11 cases of TL Administration Corp., et al. (f/k/a Twinlab Corp., et al.) ("Twinlab").[10] *See* First Amended Joint Plan of Liquidation of TL

---

[10] Specifically, the Twinlab exculpation provided:
Notwithstanding anything to the contrary contained herein, as of the Effective Date, none of (i) the Debtors and the Debtor's officers, directors, and employees, (ii) the Creditors Committee, (iii) the Ephedra Claimants Committee, and (iv) the members, representatives, accountants, financial advisors, investment bankers, consultants, and attorneys of the Entities described in (i) through (iii) of this paragraph shall have or incur any liability to any person for any act taken or omission, after the Commencement Date, in connection with or related to the Chapter 11 Cases or the operations of the Debtor's businesses during the

Administration Corp., et al., Case No. 03-15564 (RDD) (Bankr. S.D.N.Y. Jun. 3, 2005) (Docket No. 787); Order Confirming First Amended Joint Plan of Liquidation of TL Administration Corp., et al., Case No. 03-15564 (RDD) (Bankr. S.D.N.Y. Jul. 26, 2005) (Docket No. 846). Notably, the District Court Judge, who sat by designation on the Second Circuit's Metromedia panel, presided (jointly) over the confirmation of Twinlab's chapter 11 plan. Accordingly, the Releases are embodying an exculpation is also consistent with applicable law and satisfies the standards of section 1123(b)(6).

118. As noted, the Released Parties have contributed substantial value to the Debtor and the formulation of the Plan and the Plan Support Agreements. The efforts of the Released Parties in negotiating and ultimately formulating the Plan and the Plan Support Agreements enabled the Debtor to file the Plan. The recoveries negotiated by the key constituencies in the chapter 11 case are far better than would likely be available if other alternatives were pursued.

119. Negotiations with respect to the Debtor's Plan began in August of 2010, several months before filing this chapter 11 case. Among the numerous parties involved in the negotiations were the Debtor's secured lender, RBC, the existing equity members including various affiliates of the Debtor as well as Goldman, Sachs, Marciano Investment Group, Tao Menofim, IRSA International, Par Holding and Avi Chicouri, and the new equity member, New Lipstick. The lengthy and sometimes contentious negotiation process focused on formulating the Plan Support Agreements included in the Plan Supplement with respect to each of the forgoing parties and the concessions each would have to make in order to arrive at the consensual Plan.

---

Chapter 11 Cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan or the Disclosure Statement; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct or gross negligence.
See Twinlab Plan § 10.4.

134588.01600/6975454v.6

The concessions agreed to by each of the parties to the Plan Support Agreements are substantial. An essential component to such agreements were the inclusion of the Exculpation, Release, and Injunction provisions set forth in the Plan.

120. Without these provisions, the various parties would not have been able to reach an agreement on the Plan and the Debtor would not be able to realize the significant and crucial benefits it is to receive thereunder. In recognition of the generous and significant nature of such consideration, the parties viewed the Exculpation, Release, and Injunction provisions to be a nonnegotiable necessity to the agreements as set forth in the Plan.

121. Nevertheless, the terms of these provisions were heavily negotiated in good faith and at arms' length and were narrowly tailored with exclusions to ensure that all of the obligations the parties agreed to would be met and the Plan would be effectuated. Additionally, because unsecured creditors are being paid 100% pursuant to the Plan, the Exculpation, Release, and Injunction provisions do not affect anyone other than the parties who were heavily involved in the negotiation of those very provisions.

122. In light of the foregoing, there can be no doubt that the Plan provides the greatest possible recovery to the Debtor's unsecured creditors, and enables the Debtor to emerge from chapter 11 as a viable enterprise. Significantly, and as evidenced by the voting results confirmed in the Vote Certification, the Release, Exculpation and Injunction provisions were approved by a 100% majority of holders of Claims voting on the Plan.

123. The Releases, Exculpation and Injunction provisions embodied in the Plan are fair and equitable, given in exchange for valuable consideration, and are in the best interests of the Debtor and all parties in interest. In addition, such provisions are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code.

134588.01600/6975454v.6

## CONCLUSION

The Plan complies with and satisfies all applicable requirements of section 1129 of the Bankruptcy Code, and thus, should be confirmed.

Dated: New York, NY  
        December 17, 2010

Respectfully submitted,

BLANK ROME LLP

By:   */s/ Marc E. Richards*
Marc E. Richards
Scott F. Budzenski
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

    -and-

Joel C. Shapiro
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Counsel to Metropolitan 885 Third Avenue Leasehold, LLC*

134588.01600/6975454v.6